Philip FUSCO, Regional Director of the Eighth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

RICHARD W. KAASE BAKING CO., and Bakery & Confectionery Workers International Union of America, Local 19, Independent, Respondents.

Civ. No. C 62–261.

United States District Court
N. D. Ohio, E. D.

May 23, 1962.

See also 205 F.Supp. 459.

Stuart Rothman, Gen. Counsel, and James M. Fitzpatrick and James A. Sullivan, Washington, D. C., for plaintiff the United States.

Jack G. Day and Bernard A. Berkman, Cleveland, Ohio, for respondent Bakery & Confectionery Workers International Union of America, Local 19, and for Richard W. Kaase Baking Co., Edward Chitlik, Cleveland, Ohio.

GREEN, District Judge.

Philip Fusco, Regional Director of the Eighth Region of the National Labor Relations Board, filed a petition in this Court for and on behalf of the National Labor Relations Board, for injunctive relief. The matter is now pending final disposition before the National Labor Relations Board on a complaint filed by American Bakery & Confectionery Workers International Union, Local 219, AFL–CIO.

Petitioner alleges that the respondent, Richard W. Kaase Baking Company, of Cleveland, Ohio, has engaged in, and is engaging in, acts and conduct in violation of Sections 8(a) (1), (2), (3) and (5) of the Act, 29 U.S.C.A. § 158(a) (1–3, 5), and that the respondent Bakery & Confectionery Workers International Union of America, Local 19, Independent, has engaged in, and is engaging in, acts and conduct in violation of Sections 8(b) (1) (A) and 8(b) (2) of the Act.

Petitioner is the Regional Director of the Eighth Region of the National Labor Relations Board, which will hereafter be referred to as the Board. Respondent, Richard W. Kaase Baking Company, is a company engaged in the operation of a bakery and retail stores in Cleveland, Ohio, and surrounding areas, and hereafter will be referred to as Kaase.

Respondent, Bakery & Confectionery Workers International Union of America, Local 19, Independent, is an unincorporated labor union within the meaning of the National Labor Relations Act and will hereafter be referred to as BCW Local 19.

The charging union, American Bakery & Confectionery Workers International Union, Local 219, AFL–CIO, is an unincorporated labor union within the meaning of the National Labor Relations Act and hereafter is referred to as ABC Local 219.

Petitioner states that the matter is now before the Board, and prays that pursuant to § 10(j) of the National Labor Relations Act, as amended 29 U.S.C.A. § 160(j), and pending final disposition of the case before the Board, the Court grant an injunction against the respondents enjoining and restraining Kaase in the following respects:

1. Discriminating against its employees in regard to hire or tenure of employment or any terms or conditions of employment to encourage or discourage membership in any labor organization.

2. Contributing support or assistance to Local 19 of the Bakery & Confectionery Workers International Union of America or any other labor organization or recognizing or continuing to recognize Local 19 as the collective bargaining representative of its employees until such time as said Local 19 has been certified by the Board as the collective bargaining representative of the employees.

3. Maintaining, enforcing, or giving effect to the collective bargaining agreement which it entered into with respondent Local 19 or to any extension, renewal or modification of such agreement.

4. Failing or refusing, upon request, to bargain collectively in good faith with Local 219 American Bakery & Confectionery Workers International Union, AFL–CIO, as the exclusive bargaining representative of its employees.

5. In any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization to form, join, or assist labor organizations to bargain collectively through representatives of their own choosing.

Petitioner also requests that the Court grant an injunction or restraining order against BCW Local 19, respondent, from the following activities:

1. Maintaining, enforcing, or giving effect to the collective bargaining agreement which it entered into with respondent Kaase Baking Company, or any extension, renewal or modification of such agreement.

2. Causing or attempting to cause Richard W. Kaase Baking Company to recognize or bargain with said Local 19 as the representative of any employees of Kaase, unless or until Local 19 is certified by the Board as the collective bargaining representative of its employees.

3. Causing or attempting to cause Kaase to discriminate against its employees in regard to hire or tenure of employment of any term or condition of employment to encourage or discourage membership in any labor organization.

4. To refrain from any activity in any related manner restraining or coercing employees in the exercise of the right of self-organization to form, join, or assist labor organizations to bargain collectively through representatives of their choosing.

Respondent Kaase is engaged at Cleveland, Ohio, in the production of baked goods and their sale in thirty retail outlets throughout the Cleveland area. Gross retail sales amount to about two million dollars annually and in the conduct in its business Kaase purchased supplies valued at more than $50,000 from places outside the State of Ohio. The annual sales and the purchases in interstate commerce more than exceed the minimum requirements for the exercise of jurisdiction by the Board.

The present owners of Kaase purchased said company on February 4, 1961. From the time of the purchase and until October of 1961 Kaase was in financial difficulty, in that the company was losing money in its operation each month. The management determined that in order to curtail losses, it would be necessary to drop some of the retail outlets, to eliminate certain products, and also to decrease the number of employees. At the time the new owners of Kaase purchased said company there were 38 retail outlets. Because of the low average income in some of the outlets, 14 locations were closed and subsequently six new retail locations were started, so that at the time of the complaint there were thirty retail outlets.

Just prior to the purchase of Kaase by the new owners, there were 101 employees. The new owners immediately reduced this number to 82 employees, and thereafter in a series of layoffs, this number was cut down to 48 individuals who were employed at the time of the filing of the complaint. The new owners of Kaase had complained that part of the operating loss was due to the inefficiency of certain employees who were discharged by management of Kaase prior to the date of the filing of the complaint.

An election had been held in April of 1960 among the employees in four Cleveland bakeries, including Kaase, on a group basis, and ABC Local 219 was certified by the Board as the exclusive collective bargaining representative of employees of Kaase and other bakery employers.[1] Thereafter, on June 14, 1960, the management of Kaase entered into a collective bargaining agreement with ABC Local 219.

At the time that the new owners took possession of Kaase the collective bargaining agreement with ABC Local 219 was recognized and said Union was acknowledged as the collective bargaining representative of the production employees at Kaase's plant.

This contract which was maintained by both the company and the Union contain-

---

1. There is no evidence whether a majority of the Kaase employees, who prior to the election were members of BCW Local 19, voted in favor of ABC Local 219, as the election covered the four plant unit.

ed a lawful union security provision and also provided, pursuant to the voluntary authorization from each employee, for the deduction of Union dues and the remittance of same to ABC Local 219. Kaase continued to check off its employees' dues to ABC Local 219 through and including membership dues which were paid by Kaase to ABC Local 219 by check dated October 11, 1961, based upon a list of employees and amounts due prepared and submitted to Kaase by ABC Local 219 on September 26, 1961. The check-off lists and payments were uniformly based on the membership for the month preceding that in which the statement was rendered.

The contract between Kaase and ABC Local 219 provided that the contract was to expire on September 30, 1961, under the following provision:

ARTICLE XXV — DURATION, MODIFICATION AND TERMINATION

This agreement shall be and remain in full force and effect from September 30, 1959, until September 30, 1961, inclusive, and thereafter from year to year; provided that this agreement will terminate at the expiration of the initial term or any renewal term if either party gives written notice to the other of its desire for termination at least sixty (60) days before such expiration date; and provided that if this agreement is not so terminated and either party gives written notice to the other of its desire to change or modify this agreement at least sixty (60) days before any such expiration date, then this agreement shall remain in full force and effect after such expiration date until a new agreement (the terms of which shall be retroactive to such expiration date) has been negotiated and signed or until either party gives the other five (5) days written notice of termination; and provided further that no termination of this agreement

shall affect the duration of the obligations of the parties concerning payment for employee health and welfare benefits.

On July 28, 1961, Mr. John Ezinski, President of ABC Local 219, wrote to Mr. Morris Sklar, President of the Kaase Baking Company, notifying said company, "that the contract has a termination date of September 30, 1961, and that if an agreement or extension of the existing contract with modifications or a new contract is not entered into by that date, the letter would serve as a notice that the contract between the parties would terminate on September 30, 1961." (Petitioner's Exhibit 2).

Beginning August 1, 1961, there were a number of meetings between the officers of Kaase and officials of ABC Local 219. These negotiations continued beyond the expiration date of the agreement of September 30, 1961, to and including October 24, 1961.

The last bargaining session between ABC Local 219 and Kaase took place on October 24, 1961. The Union informed Kaase that they would extend the old contract terms for an additional year, providing Kaase paid its delinquency in past obligations to the Trustees of the Health & Welfare & Pension Funds for contributions required by the terms of the contract, amounting to about $24,000, and would also honor vacation commitments due certain of its employees.

Kaase contended that it needed financial relief from the burden of wage scales provided for by the existing contract, and proposed a wage reduction of approximately $10.00 per week per employee. They informed the Union that Kaase did not have the funds with which to pay the Health & Welfare & Pension assessment, and that if the Union insisted upon payment Kaase would be forced to go out of business.

At the conclusion of the meeting of October 24, 1961, the Union notified Kaase that there would be a strike on the following day unless Kaase accepted the terms set forth by the Union.

A strike call was set for midnight October 25, 1961; the strike did not materialize. The first shift that would be affected thereby was to report in during the early morning hours of October 26, 1961.

An official of ABC Local 219 testified that they decided to call off the strike because they believed that the bakery would be manned by members of BCW Local 19, a rival Union. He further testified that he instructed another Union official to advise the employees of the decision not to strike and sent him to the plant to so inform the workers as they reported in. No employee witnesses called by petitioner testified of any such notice. There was no evidence that any employee failed to appear for work that day at their regular time.

Based on the evidence, the Court believes that there is the possibility that employees of Kaase did not heed the strike call.

On October 24, 1961, Harold Friedman, President of BCW Local 19, called Kaase and requested a meeting with management. Later that same day, there was a meeting between the officers of Kaase and the representatives of BCW Local 19 at Union offices. At this meeting the representatives of BCW Local 19 informed the officers of Kaase that they had enough Kaase employee signature cards to be recognized as their bargaining representative. The company officials doubted that the membership cards which were shown to them by the Union were current, and invited the representatives of BCW Local 19 to come over to the Kaase plant the following day for the purpose of demonstrating to the employer that they had current cards from a majority of employees to BCW Local 19, and stated that if they had a majority sufficient to win an election Kaase would negotiate with said BCW Local 19.

The following day, on October 25, 1961, representatives of BCW Local 19 came over to the Kaase plant during working hours. When the BCW Local 19 officials entered the plant a work stoppage occurred. It is alleged that the stoppage was a strike in protest of their presence.

Morris Sklar, President of Kaase, testified on cross-examination that his foreman came to his office and advised him that work had stopped on the first floor. He went to the floor and saw a large number of workers standing around Harold Friedman, President of BCW Local 19. He testified that a couple of employees told him that they were not going to work while the BCW Local 19 representatives were on the premises, whereupon Mr. Sklar returned to his office.

Harold Friedman testified that when he entered the plant on that day a number of employees discontinued work and came over to speak to him. He was personally acquainted with many of them for a number of years.

The evidence further showed that within fifteen minutes after the BCW Local 19 officials arrived, the plant was back at work. The BCW Local 19 officials remained on the floor at that time and in fact circulated among the employees at their work stations, discussing questions of Union policies with them.

There is no evidence that the statements attributed to the two employees represented majority opinion rather than personal sentiment. The evidence does show that the threat of the statement was not fulfilled. On this evidence the Court is not warranted to conclude that the work stoppage was a strike by a majority of the employees in protest of the presence of the BCW Local 19 officials.

Upon invitation of the officers of Kaase, the officials of BCW Local 19 went up to the office area on the second floor, and were furnished with two private offices, where the Union officials of BCW Local 19 interviewed plant employees to urge upon them the benefits of membership in BCW Local 19, to solicit their membership, and to obtain their signatures to the authorization cards.

Although the employees were normally paid by their foreman in the plant at their work stations on their regular days of pay, on this occasion, October 25, 1961,

being payday, the employees were instructed by Kaase officials to report to the office in order to receive their pay checks. Upon entering the outer office the individual employees were asked by a representative of BCW Local 19, and on occasion by management, whether or not they would enter the private offices in order to talk to one of the officials of BCW Local 19. Many of the employees accepted the invitation and did talk with the representatives of the Union. They were requested to join BCW Local 19 and sign membership authorization cards.

Some of the employees refused to talk with the officials of the Union, were handed their checks, and went back down to the plant. All pay checks were handed to employees who came up to the office and asked for their checks, none were refused. After about 6:00 P.M., however, the checks were locked away and employees reporting in after that were unable to secure their checks. In some cases where employees were not in the plant that day, their checks were sent down and handled in the ordinary manner through the shop foreman. The President of Kaase was in the outer office passing out the pay checks during part of the time that the employees were being interviewed by the Union officials.

That same day there were other conversations between the officers of Kaase and representatives of BCW Local 19, as evidenced by a letter dated October 25, 1961, from the President of Kaase to Mr. Harold Friedman of BCW Local 19, wherein it was set forth that Kaase would negotiate with BCW Local 19 when they would present for examination membership cards recently signed by a majority of the employees in the plant. The letter further stated that they would enter into collective bargaining negotiations for an agreement similar to a contract which was attached thereto, which agreement was the printed form used by BCW Local 19.

An examination of the contract attached to the letter contains a wage scale about 10 cents higher than the wage rates in the original agreement between Kaase and ABC Local 219, which terms ABC Local 219 had offered to extend.

During the aforementioned interviews some of the employees were shown a printed form contract by the officials of BCW Local 19 and were informed by them that if they joined that Union they would obtain an increase in wages as reflected in the contract, which could not be obtained for them by ABC Local 219. It was contended that this contract which was shown was a contract already executed between Kaase and BCW Local 19. The evidence fails to support that contention.

Under date of October 27, 1961, after Kaase had discontinued further negotiations with ABC Local 219, the Kaase management wrote a letter to the President of ABC Local 219 as follows:

"This letter will serve to acknowledge your verbal notice on Tuesday, October 24, 1961, to officials of this company of the termination of our agreement originally effective for the period of September 30, 1959 to September 30, 1961.

"Apparently your intent is to notify us under Article XXV of termination. To clarify the situation, notice is hereby given to you by the Richard W. Kaase Company under Article XXV of the termination of this agreement."

The Court is of the opinion that this act was without meaning in law, for the reason that the letter of July 28, 1961 from ABC Local 219 to Kaase was a legal notice of termination, pursuant to the contract provision, and that the contract did in fact terminate on September 30, 1961, as set forth in the letter.

Thereafter Kaase withdrew recognition and refused to bargain with said Union on the ground that they no longer represented Kaase employees.

On November 7, 1961, following some further negotiations between the officers of Kaase and representatives of BCW Local 19, a contract was entered into between them to become effective December 1, 1961. The contract was later ratified by the employees of Kaase.

Thereafter Kaase discharged a number of employees whom they claimed were inefficient, some of whom had signed authorization cards and had become members of BCW Local 19.

The new contract provided for a check-off of dues to BCW Local 19 starting in December, 1961, and from that time to the date of the filing of the complaint there has been a check-off of dues and remittances of same by Kaase to BCW Local 19. Contributions have likewise been made by Kaase to the Health & Welfare & Pension Funds of the Bakery & Confectionery Workers International Union.

The officers of Kaase testified that they could pay the higher wage rate set out in the contract with BCW Local 19, for the reason that they were able to lay off people who were incompetent, whereas under the old contract with ABC Local 219 they were only able to hire and discharge selected people from a list furnished by the Union; that they now have more choice in the selection of skilled employees and as a result they now have only skilled people working in the plant and no feather-bedding. They could also hire non-union people as extra help for peak periods, which they were not permitted to do before.

On October 26, 1961, ABC Local 219 filed charges with the National Labor Relations Board claiming unfair labor practice on the part of Kaase and BCW Local 19, and the Board filed its petition in the District Court seeking injunction pursuant to § 10(j) of the National Labor Relations Act.

A number of former employees of Kaase testified at this hearing that no threat, force or intimidation was used by officers of Kaase or by officials of BCW Local 19 in attempting to get them to sign with BCW Local 19. They also testified that their pay checks were not unreasonably withheld by the employer.

There was also testimony that during the term of the contract with ABC Local 219, Kaase failed to make payments to the Health & Welfare & Pension Funds, and also that approximately thirty percent of the employees failed to receive their proper vacation time.

The respondent Union brought in a number of Kaase employees who testified that at one time previous to 1960 they were members of BCW Local 19 and became members of ABC Local 219 when it was recognized as the Kaase bargaining representative; that they were present at a meeting held by BCW Local 19 on November 18, 1961, for the purpose of ratifying the contract entered into on November 7, 1961; that all of the employees present, except one, voted for the contract.

The employees of Kaase called as witnesses testified that under date of October 25, 1961, their preference of a bargaining representative was BCW Local 19 rather than ABC Local 219.

Evidence also indicated that ABC Local 219 and BCW Local 19 are engaged in a struggle for domination of the bakery industry within Cleveland and surrounding areas. BCW Local 19 had, for several months, been engaged in a general solicitation campaign of the Kaase employees.

Section 10(j) of the National Labor Relations Act, as amended, provides as follows:

"The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."

Petitioner's complaint alleges that respondent Kaase's conduct violated Sections 8(a) (1), (2), (3) and (5) of the Act which in pertinent part provide:

"8. (a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

"(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it * *

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this Act, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in section 8(a) of this Act as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later,

"(i) if such labor organization is the representative of the employees as provided in section 9(a), in the appropriate collective-bargaining unit covered by such agreement when made * * *

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a)."

Petitioner's complaint alleges that the conduct of respondent BCW Local 19 violated Section 8(b) (1) (A) and (2) of the Act which in pertinent part provide:

"8. (b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: * * *

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;".

In substance Section 7 of the Act guarantees employees the right to form, join or assist labor organizations and to engage in concerted activities for their mutual aid or protection, or to refrain from doing any of the foregoing.

At the outset of this hearing, both respondent Kaase and respondent BCW Local 19 maintained that this action for injunction should be dismissed as having been improperly brought by the petitioner. They moved the Court to dismiss the action on the basis that the petitioner had failed to establish by competent evidence that the Board had authorized the filing of the 10(j) petition.

Section 10(j) of the Act provides that the Board itself is authorized to apply for injunctive relief thereunder. Respondents admit that the duty may be delegated to the Regional Director, but they maintain that he must have authority to do so from the Board. In their answers respondents denied that the petitioner had obtained the requisite authority from the Board.

During the course of the trial, petitioner attempted to introduce a letter written by Ogden W. Fields, Executive Secretary of the Board, relating to the issue. The letter was written after the commencement of the suit and was not properly certified. The Court rejected the admission of the letter and in so doing, advised counsel for the petitioner that under the best evidence rule a certified copy of the Board's minutes would be the proper evidence in order to prove authorization by the Board to file 10(j) proceedings. This statement was not intended to indicate that the Court was of the opinion

that this would be the only mode of proof, but rather that this would be conclusive evidence of the Board's Act. Thereafter, counsel for the petitioner introduced into evidence a properly certified copy of a memorandum dated February 21, 1962, which was prior to the date of the commencement of this action, from William Feldsman, solicitor of the National Labor Relations Board, to Stuart Rothman, general counsel of the Board, which memorandum was with reference to the subject matter of Kaase and BCW Local 19 and reads as follows:

> "In reply to your memorandum of February 15, 1962, the Board authorizes you to institute 10(j) proceedings seeking all the interim relief recommended in your memorandum."

This memorandum was admitted in evidence over objection of counsel for the respondents.

The Court is of the opinion that the certified memorandum by Ogden W. Fields (although not complying with the suggestion made by the Court to introduce a certified copy of the minutes of the Board) is an authenticated memorandum from the Board's files, directing that the proceedings under 10(j) be instituted, and is admissible. Johnson v. United States, 285 F.2d 700 (C.A.9, 1960); Federal Rules of Civil Procedure, Rule 44, 28 U.S.C.; 28 U.S.C. § 1733(b).

The Court is further of the opinion that this action having been brought by the Regional Director of the Board, who is a government official, for and on behalf of the Board, an administrative government agency, there attaches the presumption that said action has been properly filed in that the petitioner is entitled to a presumption of regularity in his official acts. Wigmore on Evidence, 3d edition, § 2534.

In the case of LeBaron v. Kern County Farm Labor Union, 80 F.Supp. 151, at page 155 (D.C.S.D.Cal.1948), Chief Judge Hall stated:

> "A presumption of regularity attaches to the acts of officers of the government" and "it would be pre-

sumed that whatever was required to be done by the Regional Director in this instance, in so far as procedure is concerned, was done."

The certified memorandum, coupled with the presumption of regularity, not having been rebutted by the respondents, is sufficient under the rules to establish that the petitioner had the proper authority from the Board to bring this action, and the Court so finds.

■ Respondent Union in its answer and also in its brief has stated that the granting of an injunction in this case is precluded by the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq. The Court is of the opinion that the Norris-LaGuardia Act does not limit the instituting of injunction proceedings under § 10(j). Douds v. Local 294, Intern. Broth. of Teamsters, 75 F.Supp. 414 (D.C.N.D. N.Y.1947).

■ It is settled that the basic purpose of Sections 7, 8(a) and 8(b) and other provisions of the National Labor Relations Act, as amended, is to preserve to employees the freedom of choosing their own representatives for the purpose of collective bargaining. As the Supreme Court has stated in this connection, N. L. R. B. v. Pennsylvania Greyhound Lines, 303 U.S. 261, at 265–266, 58 S.Ct. 571, at 574, 82 L.Ed. 831 (1938):

> "The history of the Act and its language show that its ruling purpose was to protect interstate commerce by securing to employees the rights established by § 7 to organize, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for that and other purposes."

Again, in N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, at page 33, 57 S.Ct. 615, at page 622, 81 L.Ed. 893 (1937), the Supreme Court, holding that the employees' right to organize and select a bargaining representative of their own choosing was "a fundamental right"; stated:

> "Employees have as clear a right to organize and select their repre-

sentatives for lawful purposes as the respondent has to organize its business and select its own officers and agents. Discrimination and coercion to prevent the free exercise of the right of employees to self-organization and representation is a proper subject for condemnation by competent legislative authority. * * * Congress could seek to make appropriate collective action of employees an instrument of peace rather than of strife. * * * Such collective action would be a mockery if representation were made futile by interference with freedom of choice."

The Supreme Court has also passed on a situation similar in many respects to the one now pending before this Court. In International Association of Machinists, etc. v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50 (1940), the Court had before it a decision of the Board ordering a respondent employer to cease giving effect to a contract executed by the employer and the petitioning union for a unit of toolroom employees and further ordering the employer to bargain with the United Automobile Workers for all the employees of the employer on a plant wide basis. The Supreme Court affirmed the Board in abrogating the contract on the grounds, *inter alia*, that the employer had illegally assisted the petitioner (the I.A.M.) which, as a result, did not represent a majority at the time the contract was executed. The Supreme Court stated at pages 78–79, 61 S.Ct. at page 88:

"Known hostility to one union and clear discrimination against it may indeed make seeming trivial intimations of preference for another union powerful assistance for it. * *

"The existence of unfair labor practices throughout this whole period permits the inference that the employees did not have that freedom of choice which is the essence of collective bargaining. And the finding of the Board that petitioner did not represent an uncoerced majority of toolroom employees when the closed-shop contract was executed is adequate to support the conclusion that the maintenance as well as the acquisition of the alleged majority was contaminated by the employer's aid."

The Court finds that on October 25, 1961, Kaase and ABC Local 219 had reached an impasse; that previous to that date the original contract between the parties had been terminated; that there appeared to be no alternative except to work without a contract or for the Union officials to call a strike. A strike was called for October 26, 1961, but did not materialize. By reason of facts hereinafter set out in detail, the officers of Kaase would have been justified to have some doubts as to whether or not ABC Local 219 did, in fact, represent a majority of employees.

A certified bargaining agent has the benefit of a presumption that such status continues. This presumption is rebuttable in the presence of unusual circumstances at any time and, even in the absence of unusual circumstances, when the certification is more than one year old. Celanese Corporation of America, 95 N.L.R.B. 664 (1951). The certification in this case for ABC Local 219 was on April 18, 1960, in a multi-employer unit election, which date is one and one-half years before October 24, 1961. On that latter date Kaase could have, by proper procedure, determined which of the rival unions had a majority or it could have petitioned the National Labor Relations Board for an election.[2]

Instead of doing so, Kaase permitted the representatives of BCW Local 19 to use the facilities of the private offices (being the locus of authority) to solicit membership authorization cards, which constituted the alleged unfair labor practice upon which the petition for injunc-

2. If an employer has doubts about his duty to continue bargaining, it is his responsibility to petition the Board for relief. Brooks v. N. L. R. B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125.

tion under § 10(j) of the Act was predicated.

The Court's function under § 10(j) is not to resolve conflicts in testimony or to make an ultimate determination as to whether an unfair labor practice has in fact been committed. Rather, the Court need find only that the Regional Director of the National Labor Relations Board had reasonable cause to authorize the issuance of a complaint and that the relief sought is appropriate.

The prerequisite to the granting of the relief contemplated by § 10(j) is a finding by the District Court that there is reasonable cause to believe that a violation of the Act as charged has been committed and that injunctive relief is just and proper. Schauffler v. Highway Truck Drivers & Helpers, Local 107, 230 F.2d 7 (C.A.3, 1956); Schauffler for and on Behalf of N. L. R. B. v. Local 30, United Slate, Tile and Composition Roofers, etc., 191 F.Supp. 237 (D.C.Del. 1961).

The ultimate determination with respect to the existence of a violation of the Act is reserved exclusively to the Board subject to review by the courts of appeals pursuant to Sections 10(e) and (f) of the Act.

In construing the meaning of reasonable cause, the Circuit Court in Schauffler for and on Behalf of N. L. R. B. v. Local 1291, etc., 292 F.2d 182 (C.A.3, 1961), in a proceeding under § 10(l) of the Act, stated:

"The Board need not show that an unfair labor practice has been committed, but need only demonstrate that there is reasonable cause to believe that the elements of an unfair labor practice are present."

The Court does find, under all the facts and circumstances, that there is reasonable cause to believe that an unfair labor practice has been committed.

On the facts in this case there is reasonable cause to believe that Kaase violated § 8(a) (1). The Court believes that beginning on October 25, 1961, Kaase illegally assisted BCW Local 19 in violation of § 8(a) (2) by having the employees report to the company's office (its locus of authority) for their pay checks and permitting BCW Local 19 representatives to solicit the membership of employees. Kaase in effect clothed BCW Local 19 with managerial approval. Local 19 by its participation in these acts violated the terms of § 8(b) (1) (A).

The Court does not find reasonable cause to believe that Kaase has violated Sections 8(a) (3) and (5) or that BCW Local 19 has violated § 8(b) (2).

The Court having found that there is reasonable cause to believe that an unfair labor practice has been committed, does not believe that a denial of injunctive relief is within the District Court's discretion under these facts. Brown, etc. v. Pacific Telephone, etc., 218 F.2d 542 (C.A.9, 1954).

The discretion of the Court in granting an injunction is limited to what is "just and proper," Section 10(j) provides:

The Court "shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."

The purpose of a preliminary injunction under a statute authorizing injunction pending final adjudication by the National Labor Relations Board, with respect to unfair labor practice, is to preserve the status quo until a final adjudication by the Board. Dooley, etc. v. Highway Truckdrivers & Helpers, Local 107, etc., 190 F.Supp. 112 (D.C.Del.1960).

It is the belief of this Court that the District Court has discretion as to the form and manner in which said relief shall be granted according to the circumstances of the particular case involved.

The Regional Director has requested this injunction seeking a mandatory order:

(1) To require both Kaase and BCW Local 19 to abandon the existing collective bargaining agreement which they entered into on November 6, 1961.

(2) To require Kaase to withdraw its recognition of BCW Local 19 as exclusive bargaining agent.

(3) To compel Kaase to bargain collectively with ABC Local 219 as the exclusive bargaining representative of its employees.

It is the Court's opinion that the contract entered into between Kaase and BCW Local 19 under date of November 6, 1961, was a result of the unfair labor practice on the part of Kaase in permitting said Union to solicit membership on the premises at the locus of authority of the employer. Under these circumstances, the Court can properly make an order nullifying the agreement between BCW Local 19 and Kaase and to compel Kaase to withdraw its recognition of BCW Local 19 as exclusive bargaining agent, and such an order will be made in this case.

It appears from the evidence that Kaase on October 25, 1961, had some doubt of the majority status of ABC Local 219, and the Court is of the opinion that there is reasonable cause to believe that there was a question as to the majority status of ABC Local 219. The union shop provision in favor of ABC Local 219 had not been in effect for about a month, BCW Local 19 was claiming majority status and had exhibited cards in support of its claim, ABC Local 219 had been unable to call an effective strike and the employees continued to work while the BCW Local 19 officials were in the plant circulating among them.

Having reached the conclusion that respondent Kaase had a basis for doubting the majority status of ABC Local 219, the Court is of the opinion that it would be improper to compel Kaase to recognize them as the exclusive bargaining representative of its employees.

The purpose of the 10(j) injunction is to restore or preserve the status quo at the point in time immediately preceding the commission of the unlawful act. We must bring all of the parties back to the circumstances which existed on October 25, 1961. The contract between ABC Local 219 and Kaase had terminated on September 30, 1961. Kaase and ABC Local 219 had reached an impasse in their continuing contract negotiations. BCW Local 19 claimed majority status. Kaase had a reasonable basis to question which union did in fact represent a majority of its employees.

In light of the evidence, the Court believes that if Kaase is ordered to resume bargaining with ABC Local 219 it would be more than a restoration of status quo.

The Court believes that this case is distinguishable from the facts of Jaffee v. Henry Heide, Inc., 115 F.Supp. 52 (D.C. S.D.N.Y.1953) wherein the employer was ordered to recognize the incumbent Union. In that case the incumbent Union had been certified as a result of an election held about four months prior to the commencement of the alleged unfair labor practices. The opposing Union objected to the result of that election and was overruled on that point by the N.L.R.B. At no time between the contested certification and the date it was alleged that the unfair labor practices commenced did the opposing Union assert majority status and demand recognition. Accordingly, it cannot be said that the employer therein had grounds to entertain a reasonable doubt as to the majority status of the incumbent Union at the time it was alleged the violations occurred. Therefore, it was properly within the province of the Court to order the employer to restore recognition to the incumbent Union. That is not the situation presently before this Court.

Counsel for the petitioner has informed the Court that it will be longer than six months and perhaps a year before the Board has concluded its findings in this matter. It is the belief of this Court that after a reasonable time has elapsed to allow the effect of the BCW Local 19 contract to be dissipated and a reasonable time to permit the employees to reach uninfluenced personal decisions as to Union preference, that action should be taken by the Board in order to determine which of the Unions should be certified as the exclusive bargaining representative of the employees.

This means that for the present the employees of Kaase will be without an agreement or a union. It is regrettable that the employees will suffer as a result of the rivalry between the two Unions.

Counsel for respondents have suggested to this Court that the facts in this case did not warrant the bringing of 10(j) proceedings. Section 10(j) is a discretionary provision, to be utilized in special circumstances.

The General Counsel of the N.L.R.B. submitted to a House Labor Subcommittee on the N.L.R.B., on June 29, 1961, a statement in which he said:

"No rigid criteria for the authorization of Section 10(j) action has been adopted by the Board; rather, each case has been considered on its individual merits. An analysis of past cases, however, indicates that consideration has been given to factors such as:

"1) The clarity of the alleged violation;

"2) Whether the case involves the shutdown of important business operations which, because of their special nature, would have an extraordinary impact on public interest;

"3) Whether the alleged unfair labor practices involve an unusually large geographic area, thus creating special problems of public concern;

"4) Whether the unfair labor practices create a special remedy problem so that it would probably be impossible either to restore the status quo, or effectively to dissipate the consequences of the unfair labor practices through resort to the regular procedures in the Act for Board order and subsequent enforcement proceedings;

"5) Whether the unfair labor practices involve interference with the conduct of an election or constitute a flagrant disregard of a Board certification of a bargaining representative or other Board procedure;

"6) Whether the continuation of the alleged unfair labor practice will result in exceptional hardship to the charging party;

"7) Whether the current unfair labor practice is of a continuing or repetitious nature;

"8) Whether, if violence is involved, the violence is of such a nature as to be out of control of local authorities or otherwise wide-spread and susceptible of control by 10(j) relief. A further consideration, of course, is whether 10(j) relief is timely requested, i. e., requested at a time when such interim relief may reasonably be expected to further the objectives of the Act. For example, 10 (j) relief would not be authorized after the unfair labor practice has been concluded, even when flagrant, if the Board's remedial authority is adequate to cope with the accomplished result and a repetition of the unfair labor practice may not reasonably be anticipated. CCH Labor Law Reporter, Vol. 1, page 3088."

The Court is of the opinion that the facts in this case are on the border line of the criteria set forth by the General Counsel.

Notwithstanding any reservations the Court may have concerning the wisdom of bringing this action, or its possible effect in prompting the filing of 10(j) proceedings in other situations, the fact remains that the action was filed. Having been presented to the court, the Court is bound to apply the law as it is written and has been interpreted.

The mandatory injunction is granted

(1) To require both Kaase and BCW Local 19 to abandon the existing collective bargaining agreement which they entered into on November 6, 1961.

(2) To require Kaase to withdraw its recognition of BCW Local 19 as exclusive bargaining agent, and to refrain from giving support and assistance to it or any other union.

Injunction is denied as to the request—

To compel Kaase to bargain collectively with ABC Local 219 as the exclusive bargaining representative of its employees, pending final disposition by the Board.

This memorandum shall be considered the finding of fact and law as required under Rule 52(a) of the Civil Rules of Procedure.