NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

The RICHARD W. KAASE COMPANY and Bakery and Confectionery Workers International Union, Local 19, Respondents.

No. 15555.

United States Court of Appeals Sixth Circuit.
May 20, 1965.

Melvin H. Reifin, Atty., N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Atty., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Jack G. Day, Cleveland, Ohio (Day, Berkman & Gordon, Cleveland, Ohio, on the brief; Joshua J. Kancelbaum, Cleveland, Ohio, of counsel), for respondent Bakery & Confectionery Workers' International Union, Local 19, and others.

Edward Chitlik, Cleveland, Ohio (Mandel, Chitlik, Simon & Goldsmith, Nadler, Sokolsky & Patchan, Cleveland, Ohio, on the brief), for respondent Richard W. Kaase Co.

Mortimer Riemer, Cleveland, Ohio, on the brief for amicus curiæ.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and PRETTYMAN, Senior Circuit Judge.[1]

O'SULLIVAN, Circuit Judge.

By its petition, the National Labor Relations Board here seeks enforcement of an order entered against respondents Richard W. Kaase Company and Bakery and Confectionery Workers, Local 19 (BCW Local 19). 141 NLRB 245 (1963). In accordance with findings of the trial examiner to which respondents did not except, the Board found that respondents coerced and encouraged Kaase employees to join Local 19 in violation of Sections 8(a) (1), 8(a) (2), 8(a) (3), 8(b) (1) (A), and 8(b) (2) of the National Labor Relations Act, 29 U.S.C.A. § 158. Disagreeing with its trial examiner, the Board further found that Kaase had discriminatorily discharged seven named employees in order to encourage membership in respondent Local 19 and to discourage membership in its rival, the charging union American Bakery and Confectionery Workers, Local 219, AFL–CIO (ABC Local 219). Finally, again in disagreement with its examiner, the Board found Kaase guilty of an unfair labor practice in refusing to bargain with Local 219 at a time when, as found by the Board, Kaase did not have a good faith doubt that Local 219 represented a majority of its employees. For the reasons given below, the Board's order is enforced except as to the requirement that respondent Kaase Company bargain collectively with ABC Local 219 as the exclusive representative of its involved employees.

The Richard W. Kaase Company is engaged in making bakery products and selling them at retail in Cleveland, Ohio. In April, 1960, ABC Local 219 was certified as representative of all bakery workers employed in a four-employer unit which included Kaase. New owners assumed control in February, 1961, but despite their substantial curtailment of retail outlets and reduction of the work force, the company suffered substantial losses between that time and August of the same year. As required by an existing contract which contained a union security clause, the new owners continued to recognize Local 219 as representative of their employees, but as early as March they suggested to Local 219 representatives that some adjustments would have to be made in the contract inherited from the prior owners if the company was to stay in business. During the course of these negotiations, which need not be detailed, company officials requested that each employee take a $10.00 weekly wage cut. In an effort to economize, the company greatly reduced its work force despite some resistance from Local 219, and closed some of its outlets. That the company had not been operating efficiently during the incumbency of Local 219 as the workers' representative is indicated by the following finding in the trial examiner's report,

> "Thus in December 1961, the company had attained the same dollar volume of production with 46 people that it had in January of that year with 101 employees."

The incumbent bargaining status of ABC Local 219 thus recognized by Kaase was challenged by respondent BCW Local 19 in circumstances described below. Local 19 had represented Kaase employees until Local 219 was certified as their representative following a four-employer unit election in April, 1960. There is no evidence indicating how many

1. Senior Judge of the District of Columbia Circuit, sitting by designation with the Sixth Circuit.

of the Kaase employees favored Local 219 in that election,[2] nor how many of the less than fifty still on the Kaase payroll at the end of October, 1961, so favored Local 219. We need not discuss in detail the claim advanced by both respondents that following certification, Local 219 poorly served the interests of the Kaase employees. It could be inferred that Local 219 held control of the Kaase employees primarily through use of the union security provision of its contract. The trial examiner found that the officers of Local 219 used the contract to enforce the equivalent of a closed shop relationship, and also that the officials of Local 219 "acted in a highhanded manner in regard to the employment needs of Kaase."

In July, 1961, ABC Local 219 sent notice to Kaase that unless prior agreement were reached, their collective agreement "shall terminate on September 30, 1961" according to its terms. Agreement was not reached, but negotiations continued into the month of October and union dues were checked off for that month. The final bargaining session with Local 219 occurred on October 24, 1961. Local 219 then gave orally a final five day notice of termination of their collective agreement. Following that session, Kaase's president returned a call received from an official of BCW Local 19, and was informed that Local 19 represented a majority of the Kaase employees and desired to negotiate a contract. An evening meeting was arranged, "a bunch of cards" were presented, but Kaase officials doubted the current authenticity of the authorizations and it was agreed that Local 19 representatives would visit the plant the next day to determine how many employees desired a change of representatives. Following this meeting, Kaase's secretary met alone with an international representative for ABC Local 219's parent union in an unsuccessful effort to see whether a basis for further bargaining could be discovered, and left with a statement "that they were creating a condition of war between the Union and the company."

During the afternoon of the next day, October 25, representatives of Local 19 appeared at the Kaase plant and sought to obtain authorization cards. The employees stopped work to protest this solicitation activity, and told Kaase's president that they would not work as long as Local 19 representatives were in the shop.[3] They were told they could check out and go home if they were not working, but they returned to work on instructions from Local 219. On the same day, the employees—who usually were paid at their work stations—were instructed to report separately at the plant office to receive their checks, and received them only after speaking to a representative of Local 19 in one of the plant offices or after refusing to speak with anyone from Local 19. It was conceded that membership and authorization cards were sought from those who agreed to see the Local 19 representatives. The trial examiner found that no employee was denied a check for refusing to speak to a Local 19 representative, and that the reason for distributing checks at the office was the late arrival of the president who was in the habit of checking the payroll and checks before the checks were distributed.

Later in the afternoon of the 25th, Kaase's president refused to accept from ABC Local 219's president a letter cancelling a strike called for the 26th, stating that Kaase had no further business with ABC Local 219 and had signed a contract with BCW Local 19. Apparently even further on in the afternoon Kaase gave BCW Local 19 a letter stating that if recent membership cards of a majority of its employees were presented, it would enter into negotiations toward agreeing

2. See NLRB v. Downtown Bakery Corp., 330 F.2d 921, 925 n. 7 (C.A. 6, 1964).

3. There was some dispute as to whether the work stoppage arose from resentment of the presence of the Local 19 representative, or occurred because the workers were interested in what he had to say. The factual issue, however, was resolved as we have recited it.

on a contract similar to one attached to the letter. Kaase's president testified that by October 27, BCW Local 19 had authorization cards from 28 of the 48 employees. On November 6, a contract with BCW Local 19 effective November 2 was entered into, giving the employees a wage increase. It is not disputed that on November 18, 1961, this contract was submitted for approval at a meeting of Kaase employees and by secret ballot vote it was approved by all but one of the Kaase employees. The AFL–CIO union, ABC Local 219, followed these activities with charges of unfair labor practices against the Kaase Company and the rival union, BCW Local 19, the respondents herein.

On May 23, 1962, the Board obtained an injunction requiring Kaase and Local 19 to abandon their collective agreement, and requiring Kaase to refrain from recognizing or supporting Local 19. Fusco for and on Behalf of NLRB v. Richard W. Kaase Baking Co., 205 F. Supp. 465 (N.D.Ohio 1962). At the same time, the District Judge refused an injunction to require Kaase to bargain with Local 219. Further facts and testimony will be recited where relevant, particularly in examining the charged discriminatory layoffs.

### 1) *Respondents' Motion to Dismiss*

Respondents here have moved to dismiss the Board's enforcement petition because of remarks made by Frank W. McCulloch, Chairman of the Board, in an address delivered before the Eighth Annual Joint Industrial Relations Conference on April 19, 1962. See 49 LRRM 640. In the course of an explanation of the Board's policies in using the power to seek injunctions under Section 10(j) of the Act, 29 U.S.C.A. § 160(j), Chairman McCulloch referred to the Kaase situation here involved as one where "the violation * * * seemed clear and the damage irreparable * * *." Although Chairman McCulloch did not sit on the three-member panel which considered Kaase's case, his remarks are made the basis of a claim that the case against respondents was prejudged and that we should exercise our "supervisory powers" by dismiss-

ing the enforcement petition "to the end that comparable misconduct will be discouraged in the future."

■ We are cited to no authority to support this motion to dismiss. Whether it was politic for Chairman McCulloch to have referred to the Kaase matter is not our concern. Quite obviously, the Board under advice of its General Counsel was of an initial impression that a violation had occurred. Otherwise, an injunction would not have been sought. Such impression, however, did not foreclose impartial consideration of the matter upon a full hearing. A judge who is sufficiently impressed with a plaintiff's case to issue a preliminary injunction is not thereby disqualified from presiding at a trial on the merits. The motion to dismiss is denied. Compare FTC v. Cement Institute, 333 U.S. 683, 700–703, 68 S.Ct. 793, 92 L.Ed. 1010, 1034–1035 (1948).

### 2) *Inducing Membership in Local 19*

■■ On the basis of the facts which we have recited, the trial examiner found that Kaase had violated Section 8(a) (1), (2), (3) and (5) of the NLRA, and Local 19 had violated Section 8(b) (1) (A) and (2),

> "by jointly soliciting membership in Local 19, and thereafter executing and maintaining a collective-bargaining agreement containing a union-security clause implemented by check-off provisions and limiting benefits to members of Local 19, at a time when Local 19 had no proven representation interest in the bargaining unit and did not represent a majority of the employees in such unit."

Neither Kaase nor Local 19 excepted to this and related findings by the examiner. Although Local 19 now attempts to challenge them, it is well settled that Section 10(e) of the Act, 29 U.S.C.A. § 160(e), bars review here. NLRB v. Ochoa Fertilizer Corp., 368 U.S. 318, 322, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961); NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 350, 73 S.Ct. 287, 97 L.Ed. 377, 383 (1953); NLRB v. Cheney Calif. Lumber Co., 327

U.S. 385, 66 S.Ct. 553, 90 L.Ed. 739 (1946); NLRB v. Globe-Wernicke Systems Co., 336 F.2d 589 (CA6, 1964); Kovach v. NLRB, 229 F.2d 138, 143–144 CA7, 1956). Resistance to Board claims prior to the trial examiner's report is not sufficient exercise of the administrative remedy to justify our review of questions not urged on the merits before the Board itself.

■ Because the findings of unfair assistance to Local 19 are important to the discriminatory discharge findings, however, we should note that they are supported by the evidence.

### 3) *Discriminatory Discharges*

The Board, in disagreement with its trial examiner, found that seven Kaase employees who had been officers or members of ABC Local 219, were unfairly discharged in the closing days of October, 1961, following the events here involved. The trial examiner found,

> "The General Counsel has failed to carry the burden of proof to an extent sufficient to permit me to find the discrimination alleged against any one of these seven employees as set forth in the complaint. The record clearly demonstrates that management had been trying to get rid of these people for a long period of time on the grounds of inefficiency and failure to perform their duties properly, and were blocked by representatives of Local 219."

After considering the evidence summarized below, the Board concluded that it "warrants the inference" that the discharges were intended to discourage membership in Local 219 and to encourage membership in Local 19.

To support its claim that the discharges were not discriminatory, Kaase relied primarily on considerable testimony that the employees involved were incompetent to perform tasks required by reorganization of the bakery operations, and had previously been retained only because of strong pressure from Local 219 officials. Kaase also points out that the discharged employees were replaced with former employees who had been members of Local 219 when laid off, and that although Local 219 charged discrimination in the discharge of seven other loyal members during the same period, they were never included in the complaint. Kaase urges on us the belief of the trial examiner that the names of these discriminatees "were added to the complaint by amendment made some 6 weeks after the issuance of the complaint as an afterthought."

In rejecting the trial examiner's findings, the Board relied on a number of circumstances. Possibly the most important single circumstance is the timing of the discharges to coincide with the extensive assistance Kaase rendered Local 19. As already noted, each of the seven claimed discriminatees had refused to sign Local 19 authorization cards. Three of the seven, moreover, were officials of Local 219. In addition, there was testimony that on pay day Kaase's president had told one of the seven to go in with one of the Local 19 officials to "get brainwashed," and told another employee whose discharge was not complained of that "the people who signed the card will have a job and the people who don't sign the card will be outside." It was also testified that the general foreman of the shipping department told one of the seven that "if we wanted to keep our jobs we better sign cards for Local 19. * * *" None of the seven were given any prior notice or intelligible explanation of their discharges—not one was told he was being discharged for incompetence, and one was incorrectly told his discharge was required by a further reduction of retail outlets.

■■ Acknowledging that "there is some evidence in the record to support" the claimed grounds for dissatisfaction with the alleged discriminatees, the Board nevertheless inferred from the foregoing circumstances that Kaase's "actual motivation" was discriminatory. As frequently happens, there was no direct testimony that these seven employees were discharged for refusing to join Local 19. In such circumstances, we have "held repeatedly that reasonable infer-

ences to be drawn from the evidence are matters for determination by the Board." Wonder State Mfg. Co. v. NLRB, 331 F.2d 737, 738 (CA6, 1964). We recognize that the contrary conclusion of the trial examiner is to be considered in assessing the Board's inference, Universal Camera Corp. v. NLRB, 340 U.S. 474, 492–497, 71 S.Ct. 456, 95 L.Ed. 456, 469–472 (1951), but we are unable to conclude that its determination is without support by substantial evidence on the record considered as a whole.

4) *Refusal to Bargain with Local 219*

Again disagreeing with the trial examiner, the Board concluded that Kaase committed an unfair labor practice by refusing to bargain with Local 219 on October 25 and thereafter. Emphasizing that bargaining with Local 219 had been carried on up to October 24, the Board concluded that nothing occurred *following that day* to create a good faith doubt of Local 219's continuing majority status.

Its order requires that respondent Kaase "upon request, bargain collectively with American Bakery and Confectionery Workers International Union, Local 219, AFL–CIO, as the exclusive representative of the employees in the aforesaid appropriate unit." We are asked to enforce that order now, notwithstanding what may have occurred in the nearly three and one-half years that have gone by since, pursuant to Local 219's notice to Kaase, the bargaining contract between them was terminated.

■ ■ To convict Kaase of violating Section 8(a) (5), 29 U.S.C.A. § 158, by its refusal to bargain further with Local 219, it is essential to find that at the time of the refusal Local 219 in fact enjoyed a majority status. The burden of proving such facts is on the General Counsel.

"A prerequisite to finding that the Respondent violated Section 8(a) (5) of the Act, is proof that the Union in fact represented a majority of the Respondent's employees at the time it requested bargaining. *The burden of so proving rests, of course,*

*upon the General Counsel."* (Emphasis supplied.) United States Molded Shapes, 141 NLRB 357, 359 (1963).

As we view the record, the only thing upon which General Counsel could rely to carry his burden of proving that on October 25 Local 219 was, in fact, the chosen bargaining agent of the Kaase employees was the multi-employer election of April, 1960. That election was followed on June 14, 1960, by a contract between Kaase and Local 219 containing a union security clause and designating Local 219 as the bargaining agent. The contract was to expire September 30, 1961, by force of Local 219's notice to that effect, but bargaining after that date continued its life until October 24, 1961, when the union finally terminated it with a five day notice. We do not think that in the context of this case General Counsel met his burden by this showing. The Board was able to conclude the burden had been carried only by ruling that the certification "creates a presumption of the certified union's *continued* majority status after the expiration of a year, unless a doubt as to the representative's majority status is raised in good faith." (Emphasis supplied; footnotes omitted.) We have discussed this presumption in a case involving a companion employer in Kaase's multi-employer group, but there found it unnecessary to finally determine whether the presumption alone would be substantial evidence of majority status in the peculiar circumstances presently confronting us. NLRB v. Downtown Bakery Corp., 330 F.2d 921, 927 (CA6, 1964). Limiting our decision to the situation before us, we now feel constrained to hold that proof of the certification of Local 219 in April, 1960, was not sufficient to sustain General Counsel's burden of proving Local 219's continuing majority status.

■ To support its position, the Board relies on its own decision in the Downtown Bakery case, 139 NLRB 1352 (1962); Southerland's Tennessee Co., 102 NLRB 1178 (1953); and Celanese

Corp. of America, 95 NLRB 664 (1951). The Celanese case clearly formulates the ordinary rule that "after the first year of the certificate has elapsed, though the certificate still creates a presumption as to the fact of majority status by the union, the presumption is at that point *rebuttable* even in the absence of unusual circumstances." 95 NLRB 672. We believe this presumption cannot rationally be applied in the circumstances of the present case. In both Celanese and Southerland's, the original certification established the fact that a majority of the respondent employer's employees at one time supported the certified representative. In the present case, however, there is no evidence that at the time of the election or at any time thereafter Local 219 was in fact supported by the majority of Kaase's employees; the ambiguity inherent in the multi-employer election here relied on vitiates its efficacy to prove a majority as to any single employer. Before the continuance of the fact of majority support can be presumed, the original existence of that fact must be established. General Counsel having failed to offer any proof on which a presumption of Local 219's continuing majority may be based, the absence of any other proof leaves the Board's finding unsupported by substantial evidence.

While we thus hold that the presumption relied upon may not rationally be applied to the facts of the present case, the Board's ruling is vulnerable even if we indulge the offered presumption. The effect of the Board's presumption was explained in Stoner Rubber Co., 123 NLRB 1440, 1445 (1959), in the following language,

"Proof of majority is peculiarly within the special competence of the union. * * * Accordingly to overcome the presumption of majority the employer need only produce sufficient evidence to cast serious doubts

on the union's continued majority status. The presumption then loses its force and the General Counsel must come forward with *evidence* that on the refusal-to-bargain date the union in fact did represent a majority of employees in the appropriate unit."

The Board here found that there was not "any evidence" that ABC Local 219 lost its majority on October 25 or at any time thereafter. Examination of the record, however, indicates that there is at least enough evidence to overcome any presumption that could possibly be based on the multi-employer election here involved. Thus the trial examiner concluded that,

"any presumption that Local 219 had continuing representation rights as collective-bargaining agent after October 25, 1961, is rebutted by an apparent, if not real, showing by Local 19 that it was the collective-bargaining representative of the employees of Kaase in the bargaining unit." [4]

Going behind this conclusion, the transcript of the injunction hearings, introduced before the Board by stipulation, includes testimony by eleven employees that in October, 1961, they preferred to be represented by Local 19; the court thereafter excluded an offer of similar additional testimony on the ground that it would be merely cumulative. When Kaase officials first interviewed Local 19 representatives on October 24, they were shown an unspecified number of authorization cards, and the record makes it plain that Local 19 representatives had been soliciting Kaase employees in the plant for some time. The Board itself has apparently adopted the trial examiner's finding that Local 219's strike call failed not because of an attempt to call it off but because "the employees of Kaase did not observe and adhere to the strike call." The opinion of the district court

---

4. In denying the Board's request that Kaase be enjoined to bargain with Local 219 pending the Board proceedings, District Judge Green stated that "[h]aving reached the conclusion that respondent Kaase had a basis for doubting the majority status of ABC Local 219, the Court is of the opinion that it would be improper to compel Kaase to recognize them as the exclusive bargaining representative of its employees." Fusco v. Richard W. Kaase Baking Co., 205 F. Supp. 465, 477 (N.D.Ohio 1962).

notes that prior to the multi-employer certification election in 1960, Kaase employees had belonged to Local 19 and that there is no showing how Kaase employees voted in that election.

It should be emphasized that the evidence just sketched has not been recited to establish that Local 219 lost a former majority status following Kaase's refusal to bargain. The Supreme Court has early taught us that an employer may not avoid the duty to bargain by demonstrating a loss of majority status arising from his own unfair practices. Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 687, 64 S.Ct. 830, 88 L.Ed. 1007, 1013 (1944); Franks Bros. v. NLRB, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944). Nor are we ruling that the Board would be wrong in disregarding changes in employee attitudes which it found to be the product of Kaase's unfair labor practices. We are holding instead that the record evidence rebuts any presumption that could reasonably be founded on the certification here involved, and that the Board's ruling that Kaase violated Section 8(a). (5) must fail for want of any positive evidence of Local 219's actual majority status on October 25, 1961. This failure of proof makes irrelevant the question whether Kaase entertained a good faith doubt of Local 219's status, and we do not pass on the Board's findings in this respect. NLRB v. Koehler, 328 F.2d 770, 773 (CA7, 1964).

Since we cannot uphold the Board's finding that Kaase unlawfully refused to bargain with Local 219, enforcement of its order that Kaase now bargain with that union would deny Kaase employees the right of free choice jealously protected for them by the NLRA. An election would be an efficient way to determine their representation wishes, but we do not feel it our function to order an election simply because the Board has made an erroneous finding.

Enforcement of so much of the Board's order as directs respondent Kaase to bargain with ABC Local 219 is denied. In all other respects the Board's order is enforced.