**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SMALL TUBE PRODUCTS, INC.,**
Respondent.

No. 13984.

United States Court of Appeals
Third Circuit.

Argued Nov. 8, 1962.

Decided Feb. 28, 1963.

As Amended on Denial of Rehearing
July 18, 1963.

Elliott Moore, Atty., N. L. R. B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Atty., N. L. R. B., on the brief), for petitioner.

Samuel Leiter, Boston, Mass. (Benjamin E. Gordon, Boston, Mass., on the brief), for respondent.

Before GANEY and SMITH, Circuit Judges, and AUGELLI, District Judge.

GANEY, Circuit Judge.

The question here involved is free of any real difficulty. The case is before the Court on the petition of the National Labor Relations Board, pursuant to Sec-

tion 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), for the enforcement of its order issued against respondent on December 1, 1961, following the usual proceedings under that Section of the Act, based on a complaint that the respondent was interfering with and restraining or coercing employees and failing to bargain collectively with the representatives of its employees, in violation of § 8(a) (1) and (5) of the Act, 29 U.S.C. § 158(a) (1) and (5).

■ The Court has jurisdiction of the proceedings as the unfair labor practices occurred in Blair County, Pennsylvania, where the respondent manufactures brass and copper tubes which are sold and shipped in interstate commerce.

■ Specifically, the Board found that the respondent violated these Sections of the Act by withdrawing recognition from the Union [1] certified by it as the collective bargaining representative of its employees, and in reversing the trial examiner, found that the respondent "was not possessed of a good faith doubt as to the Union's majority status on October 28, 1960," and directed the respondent, affirmatively, to bargain with the Union and to post the requisite notices with respect thereto.

The record discloses that the Board had certified the Union as the collective bargaining representative of respondent's production and maintenance employees on two separate occasions, once in 1958 and once in 1960, following which two successive collective bargaining agreements covering the employees were entered into between the respondent and the Union, the second of which expired on October 1, 1960. During the time the second contract was in effect, by reason of foreign competition, the respondent proposed to the employees that they forego certain incentive pay, which plan was rejected by the employees by a vote of 28 to 21. A supplemental agreement extended the second contract to October 16, 1960, and negotiations had been under-

way when, at the last meeting on October 13, both parties agreed an agreement could not be reached. At that time the company president, Edward Oliphant, made a last offer to the Union of ten cents an hour base pay increase and a profit-sharing plan in lieu of any incentive pay. He advised them that the increase and plan would be put in effect on Monday, October 17, even though the employees rejected them. At a meeting off the premises on October 16, the employees rejected the offer and voted to strike on Monday, October 17, forty-eight employees being present, thirty-eight voting "yes" and ten voting "no." All of the fifty-three employees of the plant worked up until the date of the strike, October 17. Pickets, operating in six shifts of four hours each, were thrown around the plant and all but three of the striking employees were among the pickets. On October 28, Mr. Oliphant wrote a letter to the Union, as well as to the employees, advising them that the company was withdrawing recognition of the Union because he did not believe the Union represented a majority of the employees and that "no employee of this Company needs to belong to the Union * * * in order to return to work immediately and remain at work." Later, three striking employees returned to work early in December of 1960, but the rest of the employees remained out until January 17, 1961, at which time the Union notified the respondent that the employees had voted to terminate the work stoppage and to "unconditionally return to work at once."

The alleged information upon which the respondent largely relied for withdrawal of Union recognition was to the effect that some workers, four in number, were willing to return to work without a Union and some fifteen to twenty-one, altogether, would have returned, but they were afraid to cross the picket line. The information was hearsay and must be mitigated no little since it was obtained from employees by the persuasive sug-

1. International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, and its Local 981, AFL-CIO.

gestions of supervisors in the workers' homes and inevitably their position could well have been stated with reluctance. Mr. Oliphant also testified that he had received four telephone calls, three of them anonymous, advising him that the individuals were willing to go back to work, but that they would not cross the picket line for fear of violence. Further, respondent complained that out of the employees who voted in the 1958 election resulting in the certification of the Union as the bargaining agent, only twenty-eight were presently connected with the company. However, the fact that there has been a turnover in the personnel of the company since the last election determining the employees' representative, is no ground for sanctioning the conduct of the company here in refusing union recognition, since there was nothing to show that the persons who had joined the company were anti-union employees. On the contrary, the evidence points to the fact that all of them adhered and were subject to the Union by bringing themselves within the Union requirements. National Labor Relations Board v. Worcester Woolens Mills Corp., 1 Cir., 170 F.2d 13, 17.

However, on the positive side, the evidence showed that nearly all of the employees were picketing during the strike; that the respondent had negotiations with the Union within two weeks of the strike; that there had been a check-off of Union dues for the week ending October 16; and all of this, together with the background of two previous Union-company negotiations, which were productive in both instances of contracts, was a strong foundation to continue to negotiate during the strike, rather than abruptly refuse Union recognition.

■ Indeed, the law casts a burden on the parties to a strike to continue negotiation during it and the refusal to do so is a violation of § 8(a) (1) and (5) of the Act. National Labor Relations Board v. Pecheur Lozenge Co., 2 Cir., 209 F.2d 393, 403; National Labor Relations Board v. Remington Rand, Inc., 2 Cir., 130 F.2d 919, 927. Additionally, the Board itself has said on a number of occasions that it is the "better practice" for the respondent to negotiate with the Union first and then, at a later time, start an appropriate proceeding to determine whether the Union lacked a majority of company employees favoring it as their bargaining agent.

Suffice it to say, on a careful review of the record as a whole, the finding of the Board that the respondent did not have a good faith doubt is supported by substantial evidence. See Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

An enforcement order will issue.

On Petition for Rehearing.

The respondent points out in its petition for rehearing that the Union was certified by the Board in 1958 only. Our statement that it was certified also in 1960 was in error. However, it is obvious that our decision is not predicated on any reliance that the Union was certified in 1960.

■■ On June 25, 1958, the Union was certified as the collective bargaining agent and two agreements were negotiated with the Company, one on September 15, 1958, and one on October 2, 1959, which was to run through October 1, 1960, and was extended by the parties to October 16, 1960. There can be no doubt since the Supreme Court's decision in Brooks v. N. L. R. B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125, that when the Board certifies a Union as majority representative, its status is immune from challenge for one year and after that period an employer may refuse to bargain with the Union if it has "fair doubts" as to the Union's continuing majority. The Board's finding here that the Company did not have a good faith doubt of the Union majority is one of fact and, accordingly, is entitled to affirmance by this Court if it is supported by substantial evidence on the record, as adverted to in the Opinion of this Court of February 28, 1963. We there reviewed the facts of record up to October 28, the date on which the Respondent broke off relations

with the Union by refusing to recognize it by withdrawal of Union recognition. While the facts there recited are sufficient to substantiate the Board's decision, since it is unnecessary to recite all the facts, showing it was not possessed of a good faith doubt as to the Union's majority status, we might add, in confirmance of the Board's decision, that of the fifty-three men who were on the Company's payroll as of October 16th, when the strike vote was taken, not a single one went to work on the 17th, nor did they return to work on any of the days up to and including October 28th, as testified to by Edward Oliphant, President and Treasurer of the Respondent. He further testified that up to the 28th of October—the date the Company refused to recognize the Union—he had gone into the plant daily and saw perhaps 20–25 employees of the Company on the picket line.

Accordingly, we confirm the finding of the Board that the Respondent did not have a good faith doubt in accordance with our Opinion of February 28, 1963.

It is Ordered that the Opinion of this Court filed February 28, 1963, be amended by deleting from page 562, paragraph 3, the following:

"The record discloses that the Board had certified the Union as the collective bargaining representative of respondent's production and maintenance employees on two separate occasions, once in 1958 and once in 1960, following which two successive collective bargaining agreements covering the employees were entered into between the respondent and the Union, the second of which expired on October 1, 1960."

and substituting therefor the following:

"The record discloses that the Board had certified the Union as the collective bargaining representative of respondent's production and maintenance employees in 1958, following which two successive collective bargaining agreements covering the employees were entered into between the respondent and the Union, the second of which expired on October 1, 1960."

The petition for rehearing is denied.