**MADISON BRASS WORKS, INC., and Surf, Inc., Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 15979.

United States Court of Appeals Seventh Circuit.

July 14, 1967.

John P. McCrory, Joseph A. Melli, Melli, Smith, Shiels & McCrory, Madison, Wis., for petitioners.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Edward E. Wall, Atty., National Labor Relations Board, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Allison W. Brown, Jr., Atty., National Labor Relations Board, Washington, D. C., for respondent.

Before SCHNACKENBERG, KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

Petitioners seek to set aside an order of the Board finding them guilty of violating sections 8(a) (1) and (5) of the National Labor Relations Act. The Board cross-petitions for enforcement. We deny the petition and enforce the order.

Madison Brass Works, Inc., is a "jobbing foundry" which makes metal castings for industrial use. Using material obtained elsewhere, Surf, Inc., assembles, packages and ships marine hardware and ornamental candle lights. The two are

affiliated [1] and are located in Madison, Wisconsin.

On October 27 and 28, 1965, employee Burkeland solicited employees of petitioners to sign cards for membership in the Union.[2] The Union wrote petitioners on October 29 claiming a majority and requesting bargaining. After receiving the letter on October 30, petitioners wrote their employees on November 2 concerning "our reasons for being against the Union." On November 4 Harry Vogts, an officer of petitioners,[3] called a meeting of employees for the same general purpose as stated by the letter. At the conclusion of his talk, a poll of the employees was taken and the poll indicated the employees were not in favor of the Union. On November 5 petitioners' attorney wrote the Union expressing doubt of the Union majority and advising the Union of the result of the poll and willingness of petitioners to cooperate in arranging a representative election.

On November 12, 1965, the Union filed for the election. The petitioners consented to an election to be held November 30. On November 20 the Union filed unfair labor practice charges and served a copy of the charges on petitioners. On November 22 petitioners' attorney interviewed employees. Subsequently the Board's General Counsel filed a complaint charging 8(a) (1) violations through threats and interrogation, conducting an open poll of employees, and unilaterally awarding wage increases;[4] and an 8(a) (5) violation for refusal to bargain with the Union.

Petitioners attack the credibility findings of the Examiner, and contend that they were denied due process because of variances between the complaint and Board findings and that there is no substantial evidence to support the Board's findings.

The Board found an 8(a) (1) violation in President Vogts' remarks at the November 4 meeting because they conveyed threats of "economic reprisal if the Union came in," and in the poll taken immediately thereafter because it was "coercive." It found against the General Counsel's charges that Vogts expressed a threat to employee Erickson on October 30, that Vogts threatened all employees in the November 2 letter, and that petitioners' attorney's interviews of employees on November 22, after the Union had filed charges, were violative of the Act.

■ We disagree with petitioners that the finding of an 8(a) (1) violation in Vogts' talk at the November 4 meeting has no substantial basis in the record as a whole. The written substance of Vogts' speech appears in an exhibit which states, among other things, that in the past employees were kept on when they could have been laid off; that Vogts and his father knew how much the weekly pay check means; that business had been bad the past few years and last year $11,000 was lost and the Vogts took no salary; that the coming of the Union could lead to strikes, strikes lose customers, lose money and stability for the company, and lost wages can never be regained; and that Vogts kept the business operating only in the interest of his father and the employees.

■ There is no material difference in the testimony of Vogts and employees Burkeland, Erickson and Anderson as to what was said at the meeting. The Examiner's characterization of Burkeland's testimony of Vogts' remarks at the meeting as "confused" does not render it incredible. Burkeland stated his infer-

---

1. It was stipulated that for purposes of the hearing petitioners could be considered a single employer and that the employees of both could be included in an appropriate bargaining unit.

2. Local Lodge 1406, International Association of Machinists and Aerospace Workers, AFL–CIO.

3. President and Treasurer of Surf, Inc., and Secretary-Treasurer and General Manager of Madison Brass Works, Inc.

4. An amendment at the hearing charged this additional violation by awarding wage increases in February, 1966, to undermine Union majority.

ence, from what Vogts said, that Vogts made an express threat. The Examiner discredited the testimony of the inference, as well as testimony of Erickson, that an express threat was made to close down the business. On rebuttal Vogts denied any express threats.[5]

We have read the testimony of the witnesses as to what Vogts said and see no basis for a claim that the Board ignored evidence or should have called more witnesses. The record as a whole supports the finding that the speech was an unfair labor practice. The questions of credibility were for the Examiner and a finding that Vogts was merely expressing opinions is not compelled by the record. It was the Board's function to decide whether the November 4 talk conveyed threats of economic reprisals if the Union came in. NLRB v. Stanton Enterprises, Inc., 351 F.2d 261, 264 (4th Cir. 1965). The finding here is justified.

At the close of Vogts' remarks employee McLean suggested a vote be taken. Vogts conducted the poll by asking all in favor of the Union to stand and raise their hands. All but one voted against the Union. The Examiner and Board found that the poll was "plainly inspired" by Vogts' talk and that it called upon employees to reveal their Union sentiment to their employer who had just given an anti-Union talk. The Board's conclusion is that the poll was coercive notwithstanding Vogts' assurance at the meeting that the voting could be done without fear of reprisal.

In our view there is a substantial basis on the record as a whole for the Board's inference that the poll was coercive under the circumstances. The Board could within its power infer that the poll was not taken in a background free from hostility toward the Union. NLRB v. Mid-West Towel & Linen Serv., Inc., 339 F.2d 958, 961 (7th Cir. 1964). The Board could also infer that, under the circumstances, the presence of Vogts and Foreman Schwenn was coercive.[6]

We see no merit in the contention that there is no substantial evidence to support the Board's finding of an 8(a)(1) violation in the unilateral granting of wage increases to five employees in February, 1966, which it thought were given to discourage support of the Union.[7] When the increases were given, hearings upon the unfair labor practice charges were imminent and the representation petition was pending. Vogts had three months previously given the employees a discouraging financial picture of petitioners' business. One of the five employees had received no raise for three years, did not ask for the one given in February, 1966, and was given no explanation for the raise. The finding, considered in the light of the previous violation, can hardly be said to be an interference with petitioners' conduct of their normal business affairs. The Board could properly conclude, in context, that the granting of the wage increase was an attempt to interfere with the freedom of the employees in their choice for or against the Union in violation of their section 7 rights. NLRB v. Exchange Parts Co., 375 U.S. 405, 409, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964).

The Board, on authority of Joy Silk Mills, Inc. v. NLRB, 87 U.S.App.

---

5. There is no merit whatever in the claim of denial of due process because of a variance between the complaint and proof. The complaint alleges Vogts threatened employees with termination of the business. It does not allege an express threat. The proof of an implied threat supports the allegation which notified petitioners of what was intended to be proved, and no prejudice is shown.

6. In Mid-West Towel, 339 F.2d at 961, the court found coercion despite the fact that the employer left the room while the ballots were being marked.

7. Petitioners claim on this point, as on the charge of threats by Vogts, that they were denied due process because of a variance between the finding and the original complaint which did not contain this charge. There is no merit whatever to the claim. The record shows petitioners had the opportunity to amend their answer.

D.C. 360, 185 F.2d 732 (1950), cert. denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350 (1951), decided that because of the unlawful speech and polls, petitioners were "precluded" from asserting a good faith doubt to justify their refusal to bargain upon request of the Union, and ordered them to do so upon request.[8] The assertion of a good faith doubt as a defense to an 8(a) (5) violation is not "precluded" as a matter of law under *Joy Silk* by the unlawful conduct of an employer. "[T]he question of whether an employer is acting in good or bad faith at the time of the refusal is * * * one which of necessity must be determined in the light of all relevant facts in the case, including any unlawful conduct of the employer, the sequence of events, and the time lapse between the refusal and the unlawful conduct." Joy Silk Mills, Inc. v. NLRB, 185 F.2d at 742. We disagree with the Board on the point, but affirm the conclusion of an 8 (a) (5) violation on a different ground.

 Petitioners asserted their "doubt that you represent a majority" in their letter to the Union written November 5, the day following the unlawful poll. The result of the poll was the reason expressed for the doubt. When they received the Union demand on October 30, petitioners expressed no doubt, called for no proof[9] and, as found, committed unfair practices to undermine the majority. The decision in NLRB v. Johnnie's Poultry Co., 344 F.2d 617 (8th Cir. 1965), does not require the Union, where its demand is not questioned, to make proof to the employer of its majority. The facts there differ from those here and there was no showing thereof "union hostility."

We think the Board's conclusion of an 8(a) (5) violation is justified on this record. There is a substantial basis for

an inference of bad faith in the failure to question the demand when received, the delay during which the unfair labor practices were committed to dissipate the Union's majority, and the reliance upon the unlawful poll as the sole foundation of the "doubt."

The order is enforced.

---

8. In determining that the Union had a majority on October 29, 1965, the Board rejected petitioners' claim that Burkeland was, and Lyons was not, a supervisor, that the unit was inappropriate and denied its challenge of certain representation cards of four of the nine employees who signed cards. There was clearly no error in the finding or these rulings which were based on credibility determinations and permissible inferences.

9. The cards unambiguously authorized the Union to act as bargaining agent.