**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**OZARK MOTOR LINES, Respondent.**
**No. 19159.**

United States Court of Appeals
Eighth Circuit.
Nov. 20, 1968.

Leonard M. Wagman, Atty., N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Mr. Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Allison W. Brown, Jr., and Franklin C. Milliken, Attys., N.L.R.B., on the brief.

Donald R. Wellford, of McCloy, Wellford & Clark, Memphis, Tenn., for respondent.

Before VAN OOSTERHOUT, Chief Judge, and BLACKMUN and LAY, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

This case is before us upon petition of the National Labor Relations Board, pursuant to § 10(e) of the National Labor Relations Act, as amended (29 U.S. C.A. § 151 et seq.), for enforcement of its order issued against respondent Ozark Motor Lines (Ozark) on May 3, 1967, which is reported at 164 NLRB No. 41. Ozark by answer has denied it is guilty of any unfair labor practice charged and asks that enforcement be denied. The unfair labor practice arose within this circuit; jurisdiction is established.

The Board found that Ozark violated § 8(a) (1) of the Act by coercively interrogating employees about union activities, by threatening employees with discharge, and by offering employees economic and other benefits if they would abandon adherence to the union. The Board also found that Ozark had violated § 8(a) (1) and (5) of the Act by refusing to bargain with the union at a time when the union represented a majority of its employees in an appropriate unit.

The Board in this same proceeding dismissed charges that Ozark was guilty of unfair labor practices in discharging employees Camden and Maudlin and no review is here sought of such determination.

Ozark operates as a common carrier of property between its main base in Memphis, Tennessee, and West Plains, Missouri. At West Plains freight shipped from Memphis is broken down and delivered by West Plains employees to consignees in West Plains and small surrounding towns, or is delivered to other truck lines for interline shipment.

Ozark is a relatively small operation originated and owned by M. M. Higginbotham. In April of 1966, Ozark had four employees in West Plains. Such employees were Camden, Maudlin, White and Evans. Higginbotham visited the West Plains operations about once a month.

Ozark contended that Camden was a supervisor. Such contention was disputed. Camden performed many of the same duties as were performed by the other employees. The Board determined Camden was a supervisor within the meaning of § 2(11) of the Act and hence was not a member of the appropriate bargaining unit. Such determination is not here controverted. Thus it satisfactorily appears that at the time here material the members of the bargaining unit were Maudlin, Evans and White.

The union here involved is General Drivers, Salesdrivers, Warehousemen and Helpers, Local Union 245, affiliated with International Brotherhood of Teamsters. Kirk, an organizer for such union, met at Ozark's office on April 27, 1966, with all of Ozark's West Plains employees. There had been some discussion among the employees relative to joining a union and word of such interest in the union had reached its officers. The arrangements for the meeting were made principally by Maudlin. Camden, who in connection with earlier employment had been a member of the union, cooperated in making the arrangements and he attended the meeting. Kirk made his union pitch and laid four union authorization cards on the table and told those present to talk the matter over among themselves. Maudlin replied, "We don't need to wait. We can sign them now." Thereupon, Camden, Maudlin, Evans and White each signed an authorization card and delivered it to Kirk.

On April 28, 1966, Kirk wrote a letter on behalf of the union to Ozark advising that the union represented a majority of the West Plains employees. Recognition was requested. Higginbotham admits receiving such letter sometime prior to May 2, 1966. On that date he drove to West Plains and immediately after his arrival he was told by Maudlin that Camden, White, Evans and Maudlin had each signed authorization cards. On that night, the next day and on the morning of May 4 prior to returning to Memphis, Higginbotham made repeated attempts to persuade the employees to abandon the union but was consistently told that the employees were adhering to their union authorization cards.

On May 5, 1966, Ozark's counsel responded to the union's letter. Ozark rejected the representation claim upon the basis that "the company has a bona fide doubt as to the majority status of your union."

It is Ozark's position that enforcement of the Board's order should be denied for the following reasons:

(1) There is no substantial evidentiary support in the record as a whole for the Board's findings:

(a) That Ozark violated § 8(a) (1) by coercive interrogation, threats of reprisal and promises of benefits.

(b) That Ozark did not have a good faith doubt that the union was a freely chosen bargaining representative of a majority of the West Plains employees at the time of its recognition refusal on May 5, 1966.

(2) The Board's remedy is inappropriate.

Our examination of the record completely satifies us that the evidence in support of the Board's factual determinations on all material issues meets the substantial evidence standard set out in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. The Board in its reported opinion adequately demonstrates that the required standards have been met. There is a conflict between the testimony of the employer and the employees. The Examiner, who heard the witnesses, credited the testimony of the employees to the extent that their testimony conflicted with that of Mr. Higginbotham. Ozark has failed to demonstrate that error was

committed in so crediting the testimony. See N. L. R. B. v. Superior Sales, Inc., 8 Cir., 366 F.2d 229, 232–233.

It is undisputed that Higginbotham was strongly opposed to the unionization of his employees. Immediately upon the receipt of the recognition request, he went to West Plains. There is evidence that he offered his employees better hours and equipment and offered White privately a $10 per week wage increase if the employees would disclaim the union, and that he made threats of discharge and engaged in prolonged interrogation during the period from May 2 to 4.

On the refusal to bargain issue, it is clear that Mr. Higginbotham learned to a certainty that three employees in the appropriate unit were sold on the union and were persistently adhering to their union affiliation, manifested by their signing of the authorization cards. While it is true that supervisor Camden favored the union, the evidence does not show that he was in a position to or in fact that he did coerce the employees into joining the union or into refusing to abandon the union. It is abundantly clear from Higginbotham's discussion with the employees that they could not have reasonably believed that they would have incurred the ill will of management by repudiating the union.

■ We have recently held that an employer has no absolute right to insist upon an election to determine whether a union represents a majority of its employees in an appropriate unit and that the employer is under a duty to bargain with a union upon demand as soon as the union presents convincing proof of its majority status. N. L. R. B. v. Ralph Printing & Lithographing Co., 8 Cir., 379 F.2d 687, 692; N. L. R. B. v. Superior Sales, Inc., 8 Cir., 366 F.2d 229, 237. As stated in *Superior Sales*, supra, an employer is protected from a § 8(a) (5) refusal to bargain charge "if, and only if, he has a good faith doubt as to the union's majority status. This good faith doubt must have some reasonable basis and is not established merely

by the employer's assertion of doubt of the majority." 366 F.2d 229, 237.

■ We believe that the union in our present case has met the burden of establishing that it represented a majority of Ozark's employees in an appropriate unit at the time of Ozark's refusal to recognize and bargain with the union, and that at said time the employer had no good faith doubt as to the union majority status.

Finally, we reach the rather troublesome issue of whether the remedy of union recognition imposed by the Board is an appropriate remedy under the peculiar circumstances of this case. The record discloses that not any of the three employees who constituted the bargaining unit at the time of the demand and refusal to bargain were employees of Ozark at the time of the Board's order. The discharge of Maudlin for dishonesty was found by the Board to be proper. White voluntarily quit his employment by reason of serious illness which subsequently resulted in his death. Evans voluntarily ceased to be part of the employee unit.

Ozark urges that there is no evidence that the union represents its present West Plains employees and that hence, the order flies in the face of a prime purpose of the Act to give employees freedom of choice of representation. Such argument has been consistently rejected by the Supreme Court. N. L. R. B. v. International Union, 375 U.S. 396, 84 S.Ct. 453, 11 L.Ed.2d 412 (reversing per curiam 7 Cir., 319 F.2d 428); N. L. R. B. v. Katz, 369 U.S. 736, footnote 16, p. 748, 82 S.Ct. 1107, 8 L.Ed.2d 230; Franks Bros. Co. v. N. L. R. B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; N. L. R. B. v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380; see N. L. R. B. v. Storack Corp., 7 Cir., 357 F.2d 893; N. L. R. B. v. Warrensburg Board & Paper Corp., 2 Cir., 340 F.2d 920; but see Local 57 v. N. L. R. B., 126 U.S. App.D.C. 81, 374 F.2d 295.

In Franks Bros. Co. v. N. L. R. B., supra, the union lost its majority status

after the employer had wrongfully refused to bargain with the union. The Board found that the union's loss of majority status was not determinative of the remedy to be ordered and that "the only means by which a refusal to bargain can be remedied is an affirmative order requiring the employer to bargain with the Union which represented a majority at the time the unfair labor practice was committed." 321 U.S. 702, 703–704, 64 S.Ct. 817, 818. The Court determined, "It is for the Board, not the courts, to determine how the effect of prior unfair labor practices may be expunged." 321 U.S. 702, 704, 64 S.Ct. 817, 818.

■ Attention is called to the fact that a remedy is available to effect a change in representation after the lapse of a reasonable time. The case just discussed, as well as the cases previously cited, reflects that a large discretion must be left with the Board in determining how an established unfair labor practice should be remedied. The Supreme Court, in its per curiam opinion in N. L. R. B. v. International Union, supra, summarily rejected a Seventh Circuit decision which found a violation of the duty to bargain, but conditioned the obligation to bargain as required by the Board upon the outcome of an election to be conducted by the Board to determine the current employees' choice concerning collective bargaining representation.

■ In our present case, the Teamsters Local would be the collective bargaining agent of the employees if the employer had recognized the union as the Board determined, and we hold the employer was required to do so. The present employees are in the same position that they would be in if timely recognition had been accorded.

There is no showing as to the present employees' choice with respect to a bargaining representative. We do not hold, and need not hold, that an election condition would not be appropriate under any circumstances. We do hold that un-

der the circumstances of this case, the Board did not abuse its authority or discretion in ordering Ozark to bargain with Local Union 245.

The Board's order will in all respects be enforced.