**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The LITTLE ROCK DOWNTOWNER, INC., Respondent.**

**No. 19427.**

United States Court of Appeals
Eighth Circuit.

Aug. 19, 1969.

---

12. Besides the money orders, the Government produced defendant's books and records.

Herman M. Levy, Atty., National Labor Relations Board, Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Jonathan M. Marks, Atty., N.L.R.B., Washington, D. C., on the brief.

Richard A. Brackhahn, of Fowler, Brackhahn & Young, Memphis, Tenn., for respondent, Newell N. Fowler, Memphis, Tenn., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and VOGEL and HEANEY, Circuit Judges.

VOGEL, Circuit Judge.

The National Labor Relations Board petitions this court, pursuant to § 10(a) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., for enforcement of its order issued on November 7, 1967, against respondent, The Little Rock Downtowner, Inc. Respondent is engaged in the motel and restaurant business in Little Rock, Arkansas. No jurisdictional issue is presented.

The Board's decision and order are reported at 168 N.L.R.B. No. 18. The Board found that respondent violated Sections 8(a) (5) and (1) of the Act by instituting unilateral wage increases among its employees and by changing their days and hours of employment without consulting their bargaining representative, by refusing to refrain from changing the terms and conditions of their employment in the future, and by refusing to bargain with the union. The Board also found that respondent violated Section 8(a) (1) of the Act by coercively interrogating and threatening its employees concerning their union activities. The Board ordered respondent to cease and desist from (1) refusing to bargain collectively; (2) unilaterally instituting changes in wages, hours, or other terms and conditions of employment of its employees without first notifying or consulting with the union; (3) coercively interrogating and threatening its employees; and (4) in any manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed in Section 7 of the Act. The Board further ordered respondent to bargain collectively with the union and to post appropriate notices.

■ The standard which governs our review is whether the Board's findings and order are supported by substantial evidence on the record as a whole. Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

On November 7, 1962, the Hospital-Hotel-Motel, Restaurant Employees Union, Local No. 200, an affiliate of the Hotel and Restaurant Employees and Bartenders International Union, AFL-CIO, was certified as the exclusive bargaining representative for an appropriate unit of respondent's motel and restaurant employees.

On July 29, 1963, and January 28, 1964, the Board issued two decisions and orders finding that respondent had committed numerous unfair labor prac-

tices, including the refusal to bargain in good faith with the union, by granting wage increases and changing working conditions of various employees and by refusing to meet with union representatives. The Little Rock Downtowner, Inc., 143 N.L.R.B. 887; 145 N.L.R.B. 1286. On March 5, 1965, this court modified and then enforced the orders of the Board, N.L.R.B. v. Little Rock Downtowner, Inc., 8 Cir., 1965, 341 F.2d 1020. Thereafter respondent held a series of collective bargaining meetings with the union through April 8, 1966. No contract resulted from these negotiations.

On January 1, 1966, respondent increased the wages of employees H. D. Becker, a maintenance man, from $10.80 to $12.00 per day, and Climmie Stewart, a porter, from $100 to $120 per month, without first advising or negotiating with the union.

On April 20, 1966, after respondent refused to agree not to make further unilateral changes, the union filed an unfair labor practice charge alleging that the respondent's action constituted a refusal to bargain in violation of Section 8(a) (5) of the Act. The Regional Director of the Board refused to issue a complaint based on the union's charge. The union then appealed the Regional Director's decision and, in December 1966, the General Counsel directed that a complaint be issued against The Little Rock Downtowner. This complaint was later consolidated for hearing with the later unfair labor practice charges discussed herein.

■ It is well settled that unilateral changes in wages may violate the Act. N.L.R.B. v. Katz, 1962, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230; N.L.R.B.

v. Newberry Equipment Co., 8 Cir., 1968, 401 F.2d 604, 609; N.L.R.B. v. Wonder State Mfg. Co., 8 Cir., 1965, 344 F.2d 210. In *Katz*, the Supreme Court noted:

"Unilateral action by an employer without prior discussion with the union does amount to a refusal to negotiate about the affected conditions of employment under negotiation, and must of necessity obstruct bargaining, contrary to the congressional policy. It will often disclose an unwillingness to agree with the union. It will rarely be justified by any reason of substance. It follows that the Board may hold such unilateral action to be an unfair labor practice in violation of § 8(a) (5), without also finding the employer guilty of over-all subjective bad faith." 369 U.S. at 747, 82 S.Ct. at 1114.

■ At first impression, the $1.20 per day increase in employee Becker's wages and the $1.00 per day increase in employee Stewart's wages may appear to be within the "de minimis" rule and thus not rising to the dignity of a violation of the Act. See N.L.R.B. v. Ralph Printing & Lithographing Co., 8 Cir., 1967, 379 F.2d 687, 692. An employer's actions should, however, be viewed with consideration to other surrounding circumstances, including events occurring previously thereto. Orders of the Board impose a continuing obligation upon an employer not to further perpetrate acts proscribed thereby or to bear the consequences.[1] Here respondent had previously been found to have violated the Act by refusing to bargain in good faith and by granting wage increases and changed working conditions unilaterally and had been

---

[1] "A Board order imposes a continuing obligation; and the Board is entitled to have the resumption of the unfair practice barred by an enforcement decree. As the Court of Appeals for the Second Circuit remarked, 'no more is involved than whether what the law already condemned, the court shall forbid; and the fact that its judgment adds to existing sanctions that of punishment for con-

tempt, is not a circumstance to which a court will ordinarily lend a friendly ear.' National Labor Relations Board v. General Motors Corp., 2 Cir., 1950, 179 F. 2d 221, 222. The Act does not require the Board to play hide-and-seek with those guilty of unfair labor practices." N. L. R. B. v. Mexia Textile Mills, 1950, 339 U.S. 563, 567–568, 70 S.Ct. 826, 828– 829, 94 L.Ed. 1067.

ordered by the Board not to make unilateral changes in wages and that order had been enforced by this court, 341 F.2d 1020. Certainly in this concept the Board permissibly found that the unilateral increases in the wages of employees Becker and Stewart violated Section 8(a) (5) of the Act.

Respondent seeks to avoid the Board's order with regard to the unilateral increase in employee Becker's wages with the contention that he was a supervisor within § 2(11) of the Act, 29 U.S.C.A. § 152(11), and thus not a member of the bargaining unit. Section 2(11) defines a "supervisor" as:

" * * * any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

This section is to be interpreted in the disjunctive and the possession by an employee of any of the powers delineated therein places him in the supervisory class. Jas. H. Matthews & Co. v. N.L.R.B., 8 Cir., 1965, 354 F.2d 432, 434, cert. denied, 384 U.S. 1002, 86 S.Ct. 1924, 16 L.Ed.2d 1015.

"The question of who is a supervisor is a practical matter and one of fact in which the Board, in the exercise of its primary function as a fact finder, must be permitted 'a large measure of informed discretion.'" N.L.R.B. v. Elliott-Willliams Co., Inc., 7 Cir., 1965, 345 F.2d 460, 463.

Further, the Board's determination of whether or not an employee is a supervisor "is to be accepted [by the court] if it has 'warrant in the record' and a reasonable basis in law." Jas. H. Matthews & Co. v. N.L.R.B., supra, 354 F.2d at 435.

The evidence shows that Becker was responsible for physical maintenance of the entire motel, hired painters on a contract basis, negotiated the cost to the company, directed the progress of the work, decided what rooms were to be painted, and exercised discretion in purchasing supplies. However, the evidence also shows that Becker could not hire painters without authorization from the motel Innkeeper, that the Innkeeper made the actual payments to the painters and determined how the rooms would be painted, and, as Becker testified, "I would not take the responsibility of just going ahead and [hiring painters]. I always go to my superior." "He is the manager. I would not do anything without consulting with my superior, of course." We conclude that the Board properly exercised its discretion in finding that Becker was not a supervisor within the meaning of § 2(11) and such finding is supported by substantial evidence in the whole record.

Respondent seeks to avoid the applicability of the Act to its unilateral increase of employee Stewart's wages with the contention that his duties and wages were increased solely to conform with the order of the local public health officer to prevent certain unsanitary conditions. While recognizing that "there might be circumstances which the Board could or should accept as excusing or justifying the unilateral action", N.L.R.B. v. Katz, supra, 369 U.S. at 748, 82 S.Ct. at 1114, we believe this not to be such a case.

Respondent and the union did not meet between April 8, 1966, and January 12, 1967. In December 1966, respondent agreed to meet for negotiations with the union on January 12, 1967. Union representative Earl Yeargan opened the meeting by presenting the union's last contract proposals as a basis for further negotiations. Respondent's attorney, Richard A. Brackhahn, then repeatedly asked Yeargan to account for his absence during the preceding eight or nine months, to which Yeargan replied he had been busy,

that he didn't think it was "any of [Brackhahn's] damn business", and that he didn't think that Brackhahn wanted to negotiate. Brackhahn then stated, "I don't think I ever want to bargain with you again. I don't think you have a majority of employees," and, "I do not believe that you have a majority of the employees, and I hope I never have to bargain with you again." Yeargan replied, "We can show them to you, or you can find out." Brackhahn then stated, "We will see" and left the meeting. The Board found that this action constituted a refusal by The Little Rock Downtowner to negotiate in good faith, in violation of § 8(a) (5) and (1) of the Act.

Respondent defends its refusal to bargain on January 12, 1967, by reliance on the rule that an employer may justifiably refuse to bargain with the union when it has a good faith doubt that the union represents a majority of its employees.[2] E.g., Brooks v. N.L.R.B., 1954, 348 U.S. 96, 104, 75 S.Ct. 176, 99 L.Ed. 125; N.L.R.B. v. Alva Allen Industries, Inc., 8 Cir., 1966, 369 F.2d 310, 316; N.L.R.B. v. Comfort, Inc., 8 Cir., 1966, 365 F.2d 867, 876; Celanese Corp. of America, 95 N.L.R.B. 664. In support of its contention of good faith doubt of the union's majority, respondent adduced evidence showing high employee turnover, expressed employee dissatisfaction with the union, and purported abandonment of the employees by the union between April 8, 1966, and the January 12, 1967, meeting.

In N.L.R.B. v. Arkansas Grain Corp., 8 Cir., 1968, 390 F.2d 824, 828, a refusal to recognize and bargain case, Judge Matthes summarized the requirements for violation of § 8(a) (5) as follows:

"We hold that an employer, irrespective of his motivations, does not violate Section 8(a) (5) by refusing to recognize and bargain with a union, if in fact the union at the time of the demand for recognition does not represent a majority of the employees. The rationale underlying the 8(a) (5) violations in N.L.R.B. v. Ralph Printing & Lithographing Company, supra, [8 Cir., 1967, 379 F.2d 687] and N.L.R.B. v. Comfort, Inc., supra, [8 Cir., 1966, 365 F.2d 867] clearly demonstrates, we believe, that two elements must concur to render a refusal to bargain violative of Section 8(a) (5): (1) a demand for recognition and bargaining by a union validly designated by a majority of the employees as their representative in an appropriate bargaining unit; (2) a refusal to bargain which is not motivated by a good faith doubt of the union's majority status."

See, also, Fort Smith Broadcasting Co. v. N.L.R.B., 8 Cir., 1965, 341 F.2d 874, 880. In the absence of unusual circumstances and where, as here, a union has been certified as the exclusive bargaining unit, then under the "certification year rule" the majority status of that union is irrebutably presumed for a reasonable period, ordinarily one year after certification. Brooks v. N.L.R.B., supra, 348 U.S. at 98, 75 S.Ct. 176, 99 L.Ed. 125; N.L.R.B. v. Alva Allen Industries, Inc., supra, 369 F.2d at 317.[3]

---

**2.** We have noted that "[t]he better and safer practice suggests that the employer with good faith doubts as to representation should continue negotiations and petition the Board for a new election or other relief," N. L. R. B. v. Alva Allen Industries, Inc., 8 Cir., 1966, 369 F.2d 310, 316; see Brooks v. National Labor Relations Board, 1954, 348 U.S. 96, 104, n. 18, 75 S.Ct. 176, 99 L.Ed. 125. In this regard, "Where * * * the union had proof of its majority status

readily available and [the employer] chose not to learn the facts, it 'took the chance of what they might be.'" N. L. R. B. v. Elliott-Williams Co., supra, 7 Cir., 1965, 345 F.2d 460, 464.

**3.** The basis for this rule is that "a bargaining relationship once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed." Franks Bros. Co. v. N. L. R. B., 1944, 321 U.S. 702, 705, 64 S.Ct. 817, 819,

This period may be extended if there was lack of good faith by the employer during the certification year, K. B. & J. Young's Super Markets, Inc. v. N.L.R.B., 9 Cir., 1967, 377 F.2d 463, cert. denied, 389 U.S. 841, 88 S.Ct. 71, 19 L.Ed.2d 105; N.L.R.B. v. Miami Coca-Cola Bottling Co., 5 Cir., 1967, 382 F.2d 921; N.L.R.B. v. Burnett Construction Co., 10 Cir., 1965, 350 F.2d 57, and the presumption may also be employed for a reasonable time after the enforcement of an order to bargain. N.L.R.B. v. Warren Co., 1950, 350 U.S. 107, 112, 76 S.Ct. 185, 100 L.Ed. 96. After the expiration of the certification year or "a reasonable period", the presumption of majority status continues, but is then normally rebuttable by a showing that the union no longer commands a majority, or the employer's production of sufficient evidence to cast serious doubts thereon, in which event "[t]he presumption then loses its force and the General Counsel must come forward with *evidence* that on the refusal-to-bargain date the union in fact did represent a majority of employees in the appropriate unit." (Emphasis in original.) Stoner Rubber Co., 1959, 123 N.L.R.B. 1440, 1445; N.L.R.B. v. Richard W. Kaase Co., 6 Cir., 1965, 346 F.2d 24, 31.

■■■ An employer's claimed good faith doubt of majority status must be something more than a self-serving assertion.

"This good faith doubt must have some reasonable basis and is not established merely by the employer's assertion of doubt of the majority. See Colson Corp. v. N.L.R.B., 347 F.2d 128 (8 Cir. 1965); N.L.R.B. v. Decker, 296 F.2d 338 (8 Cir. 1961); Jas. H. Matthews & Co. v. N.L.R.B., 354 F.2d 432 (8 Cir. 1965)." NLRB v. Superior Sales, Inc., 8 Cir., 1966, 366

F.2d 229, 237; N.L.R.B. v. Ozark Motor Lines, 8 Cir., 1968, 403 F.2d 356, 359.

Although the commission of unfair labor practices, such as the unilateral wage increases here, may reflect upon the employer's claim of good faith doubt as to the union's majority status, such practices are insufficient in and of themselves to negate a good faith doubt.[4] Madison Brass Works, Inc. v. N.L.R.B., 7 Cir., 1967, 381 F.2d 854; Pulley v. N.L.R.B., 6 Cir., 1968, 395 F.2d 870; N.L.R.B. v. Quality Markets, Inc., 3 Cir., 1967, 387 F.2d 20. Further, the filing of a decertification petition by the employer is not essential to establish its good faith reasonable doubt as to the union's majority status at the end of the certification year, N.L.R.B. v. Southern Coach & Body Co., 5 Cir., 1964, 336 F.2d 214, but may be used as cumulative evidence of bad faith, N.L.R.B. v. Downtown Bakery Corp., 6 Cir., 1964, 330 F.2d 921.

■■■ The respondent and the Board stipulated to the high turnover in company personnel since the union was certified. However, employee turnover alone does not provide a reasonable basis for concluding that a union has lost its majority status. N.L.R.B. v. John S. Swift Co., 7 Cir., 1962, 302 F.2d 342, 345; N.L.R.B. v. National Plastic Products Co., 4 Cir., 1949, 175 F.2d 755, 759; N.L.R.B. v. Small Tube Products, Inc., 3 Cir., 1963, 319 F.2d 561, 563. Here, there was no independent evidence from which it may have been inferred that respondent's new employees did not support the union. In fact, respondent's Innkeeper admitted that in January 1967 he did not know which employees were union members and that no employee had ever advised him that he was not going to join the

88 L.Ed. 1020. See N. L. R. B. v. Alva Allen Industries, Inc., supra, 369 F.2d at 317.

4. Of course, an employer may not avoid the duty to bargain by demonstrating a loss of majority status arising from its

own unfair labor practices. Franks Bros. Co. v. N. L. R. B., supra, 1944, 321 U.S. 702, 704–705, 64 S.Ct. 817, 88 L.Ed. 1020; N. L. R. B. v. Quality Markets, supra, 3 Cir., 1967, 387 F.2d 20, 24.

union or had withdrawn from membership.

With regard to the respondent's basing of its good faith doubt of the union's majority status on expressed employee dissatisfaction with the union, respondent's Manager Hixon, whom the Board found to be an unreliable witness,[5] testified that approximately ten or twelve employees indicated to him that they were not members of the union. However, we agree with General Counsel that, on the basis of the evidence, the Board could properly find that even construing Hixon's testimony in the light most favorable to the respondent, "it reflects that during a period including more than a year prior to January 12, 1967, only some 4–6 of the 60–65 unit employees expressed to him a disinterest in the union".

With regard to the respondent's basing of its good faith doubt of the union's majority status on the purported abandonment of the employees by the union, it must be recalled that the union had filed an unfair labor practice complaint against respondent on April 20, 1966, after respondent had refused to agree to refrain from initiating further unilateral changes. In this context of union animosity, we believe that the Board could properly find that lack of negotiations between the union and respondent from the April 8, 1966, meeting to the December 1966 request by the union for a meeting did not constitute an abandonment of the employees.

In view of the foregoing, we hold that there was substantial evidence on the record as a whole supporting the Board's findings that The Little Rock Downtowner did not have a good faith doubt as to the union's majority status and that its refusal to bargain on January 12, 1967, was in violation of § 8(a) (5) and (1) of the Act. We further hold that, in this case, the Board was justified in relying upon the presumption of the continuing majority status of the union and that respondent did not overcome this presumption, so as to place the burden on the General Counsel to prove, as a prerequisite to an order under § 8(a) (5), that the union in fact enjoyed majority status on the refusal-to-bargain date.

On January 15, 1967, three days after the respondent's refusal to bargain, Manager Hixon approached four waitresses standing together in the restaurant's dining room during a slack period. Hixon admittedly could not hear what the waitresses were saying, but he told them that "he was tired of us girls talking this Union business, and furthermore it would not do us any good if we did belong to the Union and that he did not want to hear it any more on the floor." The Board did not abuse its discretion in finding that the tendency of Hixon's statement was to discourage the employees from joining the union or engaging in union activities in violation of § 8(a) (1) of the Act. See Macy's Missouri-Kansas Division v. N.L.R.B., 8 Cir., 1968, 389 F.2d 835, 838; N.L.R.B. v. Arkansas Grain Corp., supra, 8 Cir., 1968, 390 F.2d 824, 826.

Respondent changed the working hours and days off of several restaurant waitresses, effective February 1, 1967, without notifying or consulting with the union. As noted in our consideration of the unilateral changes of the wages of employees Becker and Stewart, such unilateral changes may be held by the Board to violate the Act.[6]  N.L.R.B. v.

---

5. We have long recognized that credibility resolutions are to be made by the trier of facts. E. g., N. L. R. B. v. Superior Sales, Inc., supra, 8 Cir., 1966, 366 F.2d 229, 233.

6. We note that where there is no duty to negotiate, such as when the employer has a good faith doubt as to the union's majority status, then nondiscriminatory unilateral changes will not be unfair labor practices. N. L. R. B. v. Downtown Bakery Corp., supra, 6 Cir., 1964, 330 F.2d 921, 927. In this regard,

"* * * the employer may not only refuse to bargain with a certified un-

Katz, supra, 1962, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230; N.L.R.B. v. Newberry Equipment Co., supra, 8 Cir., 1968, 401 F.2d 604, 609; N.L.R.B. v. Wonder State Mfg. Co., supra, 8 Cir., 1965, 344 F.2d 210.

In the middle of February 1967, Manager Hixon asked two restaurant employees if they had signed union cards on the job. There was no evidence adduced that Hixon believed union cards had been signed on respondent's premises during working hours. The Board found that Hixon's interrogation violated § 8(a) (1).

It is well settled that an employer's interrogation of its employees is not unlawful *per se* unless conducted with such anti-union animus as to be coercive. N.L.R.B. v. Ralph Printing & Lithographing Co., supra, 8 Cir., 1967, 379 F.2d 687, 690. In view of respondent's background of anti-union hostility and its failure to show any legitimate purpose for its inquiry, the Board could properly conclude that Hixon's questioning of these employees reasonably tended to interfere with employee rights, in violation of § 8(a) (1) of the Act. See N.L.R.B. v. Ritchie Mfg. Co., 8 Cir., 1965, 354 F.2d 90, 99.

On November 27, 1967, following the Board's decision and order, respondent filed with the Board a motion to reopen the record, alleging that union authorization cards in possession of the Board's Regional Office established that the union lacked a majority on the refusal-to-bargain date. The Board denied the motion to reopen the record. In view of our holding that the Board was entitled in this case to rely upon the presumption of continued majority representation, we find no merit in respondent's contention that the withholding of these authorization cards

renders the Board's order not entitled to judicial enforcement.

The order of the Board is enforced.

VAN OOSTERHOUT, Chief Judge, (dissenting in part).

I dissent from that portion of the majority opinion holding the company's refusal to bargain with the union on January 12, 1967, constitutes an unfair labor practice and also with respect to enforcing of unfair labor practice charges based upon company activity occurring on or after January 12, 1967.

The union was certified as bargaining agent for the company employees on October 7, 1962. Our opinion requiring bargaining was filed on March 5, 1965. Thus some 22 months elapsed from the date of our enforcement order prior to the January 12, 1967, bargaining session. Therefore it would appear that the period of the irrebutable presumption of majority representation discussed in the majority opinion had expired.

In my view, any rebuttable presumption of union majority representation was dissipated by substantial evidence introduced by the company pointing to the probability that the union had lost its majority status. It was stipulated that there had been a large turnover in employees. The evidence disclosed the company had made some survey with respect to union representation and that a number of employees had expressed a lack of affiliation or interest in the union. While there had been a number of negotiation sessions since our prior decision, no contract was agreed upon. There had been a lull in union activity for a period of eight months prior to January 12, 1967, and the union representative when questioned about this responded that the activities were none of the company's business. There was no effort at the January 12 meeting or any time subsequent thereto or at the

ion which he has reasonable grounds to believe has lost majority support, but may also change wages or conditions of employment, although he does the latter at his peril that his belief as to the

loss of majority is not only reasonable but right, * * *." N. L. R. B. v. Superior Fireproof Door & Sash Co., Inc., 2 Cir., 1961, 289 F.2d 713, 719.

trial to prove majority representation. As stated in Stoner Rubber Co., Inc., 123 NLRB 1440, 1445:

> "After the lapse of the certification year, the certification creates only a presumption of continued majority. This presumption is rebuttable. Proof of majority is peculiarly within the special competence of the union. It may be proved by signed authorization cards, dues checkoff cards, membership lists, or any other evidentiary means. An employer can hardly prove that a union no longer represents a majority since he does not have access to the union's membership lists and direct interrogation of employees would probably be unlawful as well as of dubious validity. Accordingly, to overcome the presumption of majority the employer need only produce sufficient evidence to cast serious doubt on the union's continued majority status. The presumption then loses its force and the General Counsel must come forward with *evidence* that on the refusal-to-bargain date the union in fact did represent a majority of employees in the appropriate unit."

Most courts take the view that a rebuttable presumption disappears completely from the case upon presentation of evidence which would support a finding of the nonexistence of the presumed fact. See 29 Am.Jur.2d Evidence § 165.

As pointed out in the quotation from N.L.R.B. v. Arkansas Grain Corp., 8 Cir., 390 F.2d 824, 828, in the majority opinion, it is necessary in order to establish a refusal-to-bargain violation to prove each of the following elements:

> "(1) a demand for recognition and bargaining by a union validly designated by a majority of the employees as their representative in an appropriate bargaining unit; (2) a refusal to bargain which is not motivated by a good faith doubt of the union's majority status."

Said case also establishes that there can be no violation if the union at the time of the demand for recognition does not represent a majority of the employees.

The General Counsel by failing to produce any evidence of majority representation on January 12, 1967, has failed to meet the burden resting upon him to establish a wrongful refusal to bargain. Such determination eliminates any need for reaching the separate and independent good faith belief issue.