**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ROSELYN BAKERIES, INC., Respondent.**

**No. 71–1927.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1972.

Decided Dec. 4, 1972.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Joseph C. Thackery, Atty., N. L. R. B., Washington, D. C., for petitioner.

Herbert C. Snyder, Jr., George J. Zazas, Indianapolis, Ind., for respondent.

Before KILEY, Circuit Judge, KILKENNY,* Senior Circuit Judge and STEVENS, Circuit Judge.

KILKENNY, Circuit Judge:

Before us for enforcement is the order of petitioner finding that respondent violated § 8(a)(1) of the National Labor Relations Act [29 U.S.C. § 151 et seq.] by threatening employees with a lockout or shutdown in the event they persisted in organizing activities in connection with selection of Local 372, Bakery and Confectionery Workers International Union of America, to replace Roselyn Bakery Employees' Union as the collective bargaining agent of the company's production and maintenance employees. Additionally, petitioner found that respondent had violated the Act by telling an employee that she should confine her use of the restroom to her breaks.

## BACKGROUND

In July, 1970, Local 372 started an organizing campaign among respondent's employees seeking to unseat the incumbent Employee Union. Local 372 filed a representation petition with the Board on July 31st. Unsuccessful in the election, Local 372 filed objections to the general conduct of the election and a charge alleging numerous acts of interference and coercion on the part of respondent during the pre-election period. The cases were consolidated for hearing by a trial examiner who found that the employer had not engaged in any unlawful conduct and recommended that the complaint be dismissed and the objections overruled. On review, a divided panel of the Board found that respondent had violated the Act in the mentioned particulars.

The campaign to unseat the incumbent employees' union was hotly contested. Respondent vigorously attacked Local 372 emphasizing the theme that unions with international affiliation, such as Local 372, constituted a threat to job security and actively campaigned against

* Senior Circuit Judge John F. Kilkenny of the Ninth Circuit, sitting by designation.

Local 372, orally, and with a series of eight letters to employees over the vice-president's signature. Respondent's president, John Clark, posted printed articles next to the time clock where, in his own words, the employees "couldn't help but see." One of the articles described a lockout situation at a local taxi company. A few days before the election, Clark brought to the employees' attention a one page magazine article on the subject of lockouts. It defined a lockout as occurring ". . . when an employer decides either to shut down his operation or temporarily to put his regular employees on the street. . . ." According to the article, a lockout ". . . has practically achieved the status of legality in almost all situations. . . ." Included was a statement that the Supreme Court had ". . . struck at the very roots of the Labor Board's restrictive view of the lockout. . . ." and that ". . . while many questions still remain . . .", the Board ". . . seems to have concluded that a lockout should be held lawful simply on a finding of business justification. . . ." There was conflicting evidence on whether Clark read portions of the article to the employees. He admitted, however, that he read aloud the heading to the article "Management's Lockout Rights Firmly Entrenched" and urged the employees to read it. He left a copy of the magazine turned to the appropriate page on the foreman's desk. When employee Turner asked Clark if he would actually shut down the plant, Clark showed her the article and suggested that she might read it.

On the entire record, the Board found respondent had violated the pertinent sections of the Act.

## CONCLUSIONS

■■ (1) While it is well settled that an employer is free to communicate to its employees any of its general views about unionism or any of its specific views about a particular union, NLRB v. Gissell Packing Co., 395 U.S. 575, 618, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), it is equally well established that its communications must not contain a threat of coercion or reprisal, express or implied. *Gissell, supra*, p. 618, 89 S.Ct. 1918. If the employer expresses his views on the effect that unionization may have on the future economic health of the company, his projections must be very carefully phrased on the basis of objective fact. Textile Workers v. Darlington Mfg. Co., 380 U.S. 263, 274, n. 20, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965). If there is any *implication* that employer may or may not take action solely on his own initiative for reasons unrelated to economic necessity and known only to him, the statement is no longer a reasonable prediction based on available facts, but is a threat of retaliation based on misrepresentation and coercion and, as such, without the protection of the First Amendment. *Gissell, supra*, p. 618, 89 S.Ct. 1918. Any balancing of the rights of the employees under § 7, as protected by § 8(a)(1) and the proviso in § 8(c), must take into account the economic dependence of the employees on the employers and the necessary tendency of the former, because of that relationship, to be alerted to intended implications of the latter that might be more promptly dismissed by one who was entirely disinterested. Beyond question, employees are particularly sensitive to rumors of plant closing and view such rumors as coercive threats, rather than honest forecasts.

■■ As a reviewing court, it is our duty to recognize the Board's competence, in the first instance, to judge the impact of the statements made in the context of the employer-employee relationship. *Gissell, supra*, p. 620, 89 S.Ct. 1918; NLRB v. Virginia Electric & Power Co., 314 U.S. 469, 479, 62 S.Ct. 344, 86 L.Ed. 348 (1941); NLRB v. Kolmar Laboratories, 387 F.2d 833, 836 (CA7 1967). In accord, Madison Brass Works, Inc. v. NLRB, 381 F.2d 854, 857 (CA7 1967). Inasmuch as lockouts are unlawful when used for the purpose of defeating an organizational drive or

avoiding an obligation to bargain, the respondent's action in here threatening such consequences was plainly unlawful. Tonkin Corp. of California v. NLRB, 392 F.2d 141, 145 (CA9 1968), cert. denied 393 U.S. 838, 89 S.Ct. 114, 21 L.Ed.2d 108 (1968).

The authorities cited by respondent, such as NLRB v. Herman Wilson Lbr. Co., 355 F.2d 426 (CA8 1966); Colecraft Mfg. Co. v. NLRB, 385 F.2d 998 (CA2 1967); National Can Corp. v. NLRB, 374 F.2d 796 (CA7 1967); Texas Industries, Inc. v. NLRB, 336 F.2d 128 (CA5 1964), and Sax v. NLRB, 171 F.2d 769 (CA7 1948), predate Gissell and are not controlling. NLRB v. Automotive Controls Corp., 406 F.2d 221 (CA10 1969), although decided six months subsequent to Gissell makes no reference to the decision and is distinguishable on the facts. Likewise, our decision in Lake City Foundry Co. v. NLRB, 432 F.2d 1162 (CA7 1970), is grounded on a factual situation bearing little similarity to the one before us. There, the president of the company told an employee who commenced a solicitation of union membership that the company was opposed to an outside union and if there was to be a union, he preferred one by the employees. The statements by the company's secretary to an employee with reference to obtaining personal loans and other matters were held to be nothing more than expressions of opinion. Moreover, the court there held that letters sent by the company to employees before an election involving a choice between two unions asking whether outsiders, or people known to employees, could run the company best and stating that employees' union knew the problems, did not constitute interference, restraint or coercion of the employees. There is nothing in Lake City even remotely approaching the implied coercive threat of plant closure in the record before us. Our latest pronouncement on the subject, Utrad Corp. v. NLRB, 454 F.2d 520 (CA7 1971), is of no aid to respondent. There, the court found that a single isolated statement made by an employee, without the knowledge or encouragement of management, would not support a finding of coercion by the employer. Here, in contrast to Utrad, the coercive activities were conducted by respondent's highest officers.

In the totality of circumstances here presented, the Board was clearly justified in finding and concluding that the respondent was threatening its employees with a lockout or shutdown if the then organizational activities continued or if they selected Local 372. We have no difficulty in holding that petitioner reasonably concluded that respondent's implied warnings of a lockout were coercive in nature and in violation of the Act.

■ (2) In our examination of the record, we find insufficient evidence to support the Board's finding that respondent unlawfully restricted the employee Turner's use of the restroom. Although we suspect that the employee's union activities may have prompted the alleged restriction, suspicion does not rise to the dignity of proof.

The order of petitioner, as herein modified, will be enforced.

It is so ordered.

STEVENS, Circuit Judge (dissenting in part).

Clark made two references to lockouts, the first concerning the labor dispute at the Red Cab Company and the second to the magazine article on the subject of lockouts. I agree that if either of these references was an implied threat to use the lockout to defeat Local 372's organizing activities, an unfair labor practice was committed. On the other hand, the majority of the Labor Board assumed that if those two references merely related to a bargaining impasse that might or might not arise in the future, they were permissible.[1] The case thus turns

---

1. "The Trial Examiner, considering the propriety of Clark's conduct in posting the newspaper article and in urging upon the employees the magazine article on

on a factual issue. Contrary to the analysis of that issue by the Trial Examiner, the Board majority concluded that the respondent was threatening its employees with a lockout or shutdown if the then organizational activities continued or if they selected Local 327.

After summarizing the oral testimony relating to the taxicab situation, the Trial Examiner found that Clark had "stated no more than that if the situation were the same between his Company and a union as between the Red Cab Company and the Union he would lock out the employees and take a vacation too. Inasmuch as lockouts, offensive and defensive, in many circumstances are lawful I cannot find that Clark overstepped the bounds by stating that under the circumstances in which the cab company found itself he too would lock out employees. This is surely the most that can be inferred from the remarks attributed to him by Turner. I cannot read his remarks, as attributed to him by Turner, as a threat to shut down in the event the Charging Party was successful in its organization." A. 6–7.

With respect to the magazine article, three witnesses testified and the Examiner found that none of their stories was completely correct. Considering the testimony of Mrs. Turner, the strongest proponent of Local 372, he found:

"I believe further that when Turner asked Clark the question whether he could shut down the plant he brought her the article by way of an answer that he had a legal right to do so. Finally I believe *that the conversation was not concerned with shutting down*

*the plant in the event the Charging Party was successful in its organizing attempt but rather shutting the plant down from the standpoint of a strike/lockout situation.* As I have found above an employer's statement of his rights in this regard does not constitute an unlawful threat. If an employer has a right to lock out his employees in a bargaining situation he has a right to tell his employees that he has such a right and I find that this is all that Respondent did in this situation. To the extent that Mrs. Turner's testimony can be construed to attribute to Clark a threat that he would close down the plant if the Charging Party was successful in its organizing attempt, I discredit them." A. 9. (Emphasis added.)

As I read the portions of the record before us, I am persuaded that the Trial Examiner's appraisal of the evidence was correct and, as Chairman Miller stated in dissent, the evidence does not "warrant the majority's conclusions, which are in substance reversals of the Trial Examiner's credibility findings, concerning the Respondent's motivation." A. 19.

The Board, in my opinion, improperly treated the issue as one of interpreting the written article, rather than the oral conversation between Turner and Clark which led to the reference to the article. The Examiner expressly found "that the conversation was not concerned with shutting down the plant in the event the Charging Party was successful in its organizing attempt but rather shutting the plant down from the standpoint of a strike/lockout situation." [2] The Board's

---

management's right to lockout, concluded that Clark was referring to a 'strike/lockout' problem in a bargaining situation, and thus, was doing no more than telling his employees what were his legal rights. We reject that conclusion. There is no evidence that Clark ever stated to employees that any of the printed references to the right to lockout did not apply to organizing situations; similarly there is no evidence that the employees were under the impression that the lockout refer-

ences involved bargaining situations only. Rather we believe that any realistic appraisal of the situation compels the conclusion that the emphasis of Clark on the right to lockout was made with respect to the organizing activities presently of concern to the employees and not with regard to some bargaining situation that might or might not arise in the future." A. 13.

2. Even if the magazine article incorrectly implied that respondent could legally lock

opinion does not explain why this credibility determination was erroneous. Accordingly, I am persuaded that the Board majority erred. Universal Camera Corp. v. Labor Board, 340 U.S. 474, 496–497, 71 S.Ct. 456, 95 L.Ed. 456.

I respectfully dissent.

out his employees in an organizing situation as well as during a bargaining impasse, it does not follow that the reference to the article implied a threat to do so. It is noteworthy that the article was pro-

duced in response to a question from Turner and that even Turner testified that the Union had confirmed Clark's comments about his rights. A. 41–42.