**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NORTH AMERICAN MANUFACTUR-ING COMPANY, Respondent.**

No. 76–1987.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1977.

Decided Oct. 12, 1977.

W. Christian Schumann, Atty., N.L.R.B., Washington, D. C. (argued), John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Marion Griffin and John N. Phillips, Attys., N.L.R.B., Washington, D. C., on brief, for petitioner.

Soren S. Jensen, Swarr, May, Smith & Andersen, Omaha, Neb. (argued), and George C. Rozmarin, Omaha, Neb., on brief, for respondent.

Before GIBSON, Chief Judge, and HEANEY and STEPHENSON, Circuit Judges.

GIBSON, Chief Judge.

The National Labor Relations Board (Board) petitions for enforcement of its order of June 18, 1976, against respondent North American Manufacturing Company. North American (Company) maintains a plant in Sioux City, Iowa, for the manufacture, sale and distribution of industrial trucks, farm equipment and related products. On May 16, 1973, following a Board-conducted election, District No. 12, International Association of Machinists and Aerospace Workers, AFL-CIO (Union) was certified as the exclusive collective bargaining representative of the production and maintenance employees at the Company's Sioux City plant. The Company and Union subsequently executed a collective bargaining agreement for the period from September 10, 1973, until September 9, 1975.

In late May 1975, a Company supervisor asked an employee whether he had attended a union meeting, whether the meeting had been heavily attended and whether he was a union member. Similar questioning occurred in July or August 1975. In a letter dated June 23, 1975, the Union requested negotiations for a collective bargaining agreement to succeed the contract expiring on September 10, 1975. The Company responded by letter dated July 2, 1975, that it would not enter negotiations because it did "not believe it would be proper or legal for us to consider you as the majority representative of our employees at this time." The Company informed employees of its refusal to bargain in a bulletin issued on the same date, which also asserted the Company's "opinions" that no more than 25% of its employees supported the Union and that "we all would be better off without this Union." A slightly more elaborate and emphatic bulletin, which urged employees to manifest their nonsupport of the Union by staying away from an impending union meeting, was issued on July 15, 1975.

Since July 2, 1975, the Company has refused to bargain with the Union. Relying upon its opinion that the Union does not represent a majority of employees, it has refused to accede to a Union request for information on unit employees. The Company has also granted unilateral benefits to its employees without bargaining with the Union.

On the basis of the foregoing facts, the Board found that the Company had violated § 8(a)(1) of the National Labor Relations

Act, 29 U.S.C. § 151 *et seq.* (1970), by interrogating several employees about their own or other employees' union activities.[1] The Board further found that the Company had violated §§ 8(a)(5) and 8(a)(1) of the Act by refusing to recognize and negotiate with the Union, by refusing to furnish information to the Union that was relevant and necessary to the performance of its functions as a bargaining representative and by instituting wage increases or economic betterments unilaterally and without bargaining with the Union.

### Interrogation of employees

■ In May 1975 and again in July or August 1975, employees were interrogated by representatives of the Company concerning their union membership and attendance by employees at union meetings. The Company has failed to show a legitimate purpose for these interrogations, which were not accompanied by assurances that there would be no reprisals for engaging in union activities. The May interrogation occurred shortly before the Company withdrew recognition of the Union. The later interrogation took place after the Company had, *inter alia,* denigrated the Union, refused to bargain with the Union and promised unilateral benefits to its employees. Thus, the Company harbored anti-union sentiments during the period in which these interrogations took place. Interrogation of employees is not unlawful per se, but where questioning occurs in the context of anti-union animus, without assurances of non-reprisal and without a legitimate purpose, it is coercive and violative of § 8(a)(1) of the Act. *NLRB v. Spotlight Co.,* 440 F.2d 928, 930 n.6 (8th Cir. 1971); *NLRB v. Little Rock, Downtowner, Inc.,* 414 F.2d 1084, 1093 (8th Cir. 1969). Our review of the record as a whole convinces us that there is substantial evidence to support the Board's findings that the Company's interrogations of em-

ployees were coercive and in violation of § 8(a)(1).

### Refusal to bargain

■ Board certification of a union as a unit bargaining representative creates a rebuttable presumption of continuing majority status after expiration of the certification year. *National Cash Register Co. v. NLRB,* 494 F.2d 189, 194 (8th Cir. 1974). This presumption does not preclude an employer from questioning the level of union support. An employer who believes that a union no longer possesses majority support may poll his employees by secret ballot, provided he complies with the safeguards of *Struksnes Construction Co.,* 165 N.L.R.B. No. 102 (1967), *approved in NLRB v. Harry F. Berggren & Sons, Inc.,* 406 F.2d 239, 244 (8th Cir.), *cert. denied,* 396 U.S. 823, 90 S.Ct. 64, 24 L.Ed.2d 74 (1969), or he may file a petition for a representative election with the Board. *NLRB v. Little Rock Downtowner, supra* at 1090 n.2. He may also simply refuse to bargain with the union and undertake to justify this refusal by rebutting the presumption of continuing majority support. To rebut this presumption, an employer must show that the union actually lacked majority support on the date in question or that the refusal to bargain was based upon a reasonably grounded good faith doubt of majority support. *Orion Corp. v. NLRB,* 515 F.2d 81, 84–85 (7th Cir. 1975). An employer's good faith doubt of majority status must be more than a self-serving assertion. *NLRB v. Little Rock Downtowner, supra* at 1091.

■ Because it withdrew recognition and refused to bargain with the Union after the expiration of the certification year, the Company must rebut the presumption of continuing majority status in order to establish a defense to the § 8(a)(5) violation with which it was charged. The adminis-

---

1. A hearing before an administrative law judge was conducted on November 4, 1975. On March 18, 1976, his recommended order was adopted by the Board, which affirmed his rul- ing, findings and conclusions. The Board's decision and order are reported at 224 N.L.R.B. No. 172 (1976).

trative law judge found that the Company had failed to establish either a lack of majority status or the existence of a good faith doubt, and the Board adopted his decision. The Company contends that the administrative law judge ignored its attempt to establish both good faith doubt as to majority status and the Union's actual lack of majority status, and that he improperly commingled these separate defenses into one impossible defensive burden. A reading of the administrative law judge's decision belies this contention and convinces us that he distinguished the two alternative defenses clearly, and considered the Company's evidence inadequate to establish either. Furthermore, our own review of the record persuades us that the administrative law judge's findings are supported by substantial evidence on the record as a whole.

The Company attempted to justify its refusal to bargain on several grounds. First, it cited a lack of "formal" union organization, which was allegedly manifested by low attendance at union meetings and a low level of grievance activity in mid-1975. The Company's evidence of low attendance at union meetings was weak.[2] Even if there had been strong evidence on this point, however, we would be reluctant to infer that low attendance at union meetings established lack of majority support or a basis for a bona fide doubt as to the existence of such support. Disinterest in attending union meetings can be attributed

to many causes. Given the fact that Iowa is a right-to-work state where employees may reap the benefits of union representation without the necessity of being union members, we would be particularly hesitant to equate attendance at union meetings with actual union support or to encourage employers to make this equation. *Cf. Orion Corp. v. NLRB, supra* at 84 (employee membership in or actual financial support of a union is not an accurate gauge of union support); *Terrell Machine Co. v. NLRB*, 427 F.2d 1088, 1090 (4th Cir.), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1821, 26 L.Ed.2d 91 (1970) (showing that less than a majority of employees in a bargaining unit were union members or paid union dues was not the equivalent of showing lack of union support).

For similar reasons, we deem the Company's evidence of a purportedly low level of grievance activity nonprobative of the issue of union support. The particular grievance process in effect here did not require that the Company be involved in or even made aware of all grievances. Thus, the Company should have been cognizant that its impression of grievance activity would be a poor indication of the actual grievance situation. Moreover, the record shows that there were union committeemen handling grievances during the period in question and that grievances were in fact being processed. Thus, we agree with the administrative law judge that the Company's evi-

---

**2.** At the hearing before the administrative law judge, the Company sought to require the Union to comply with a subpoena calling for the production of (1) all documents relating to union meetings between January and June 1975, (2) all authorization cards, records or other written evidence of membership for this period and (3) all such evidence provided to the Board from January through September 1975. The administrative law judge revoked this subpoena and the Company challenges his ruling. We deem it correct for the simple reason that the evidence sought by the subpoena would not have been adequate to rebut the presumption of continued majority support. We do not consider attendance at union meetings probative of actual union support. Moreover, the Company was not informed of the level of such attendance when it withdrew recognition of the Un-

ion. It cannot now manufacture an after-the-fact justification for its action on the basis of a good faith doubt by relying on information that was unavailable to it when it made the decision to refuse to bargain.

Records of actual membership would have been equally inadequate as proof of a bona fide doubt and as evidence of a lack of majority support, for "[t]he issue to be decided was not how many employees belonged to the union or paid dues but rather whether a majority desired union representation * * *. [T]here is no necessary correlation between support for the union as bargaining representative, on the one hand, and the payment of dues or membership in the union, on the other." *Retired Persons Pharmacy v. NLRB*, 519 F.2d 486, 491 (2d Cir. 1975).

dence on attendance at union meetings and grievance levels was inadequate to establish a lack of majority support for the Union or a basis for a good faith doubt of such support.

The Company also relied upon the allegedly anti-union remarks of a small number of employees to justify its refusal to bargain. The remarks attributed to employees by the Company were introduced into evidence through the testimony of the plant manager. None of the five employees alleged to have participated in the conversations involved was produced as a witness by the Company. The administrative law judge characterized the Company's evidence on this point as "bits and scraps of rumor, gossip, hearsay" offered in a futile attempt to fortify "wishful thinking" into a bona fide doubt of majority union support. We agree with the administrative law judge that these remarks were inadequate to establish either a lack of majority support or to implant in the Company a good faith doubt as to such support. The remarks in question simply reflected the fact that a small number of employees were not favorably impressed with the Union.

Finally, the Company relies on a low level of dues checkoff authorizations as justification for its withdrawal of recognition and refusal to bargain. Where, as here, union checkoff authorizations are noncompulsory, employees may decline to execute checkoff authorizations for a number of reasons unconnected with their desire to have a union represent them. *See NLRB v. Gulfmont Hotel Co.,* 362 F.2d 588, 592 (5th Cir. 1966). Accordingly, there may be little correlation between a checkoff list and number of union supporters. *National Cash Register Co., supra* at 195. Assuming *arguendo* that there was a drop in checkoff authorizations, we do not deem this factor alone probative of a lack of majority support or of a good faith doubt. Moreover, the other factors relied upon by the Company are far too weak to fortify a drop in checkoff authorizations into a salient indication of minori-

ty union support or a sound basis for a good faith doubt of majority support. *Cf. Ingress-Plastene, Inc. v. NLRB,* 430 F.2d 542, 546–47 n.6 (7th Cir. 1970).

The administrative law judge and the Board found that the Company had failed to rebut the presumption of continued majority support for the Union. Thus, its withdrawal of recognition and refusal to bargain with the Union were violative of §§ 8(a)(5) and 8(a)(1) of the Act. These findings are supported by substantial evidence on the record as a whole.

*Refusal to furnish information and granting of unilateral benefits*

■ The Company concedes that, following its withdrawal of recognition of the Union, it refused to furnish information concerning unit employees to the Union and that it granted unilateral benefits to employees without bargaining with the Union. The validity of these actions is inextricably tied to the propriety or impropriety of the Company's withdrawal of union recognition. Our conclusion that, as the administrative law judge and Board found, the Company violated § 8(a)(5) in withdrawing recognition and in refusing to bargain, removes the only possible justification for the refusal to furnish information to the Union and the granting of unilateral benefits. Thus, these actions constituted violations of §§ 8(a)(5) and 8(a)(1) of the Act.

The petition of the Board for enforcement of its order is granted.