NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CARMICHAEL CONSTRUCTION COM-
PANY, Hahn & Hupf Construction, Inc.,
and Kealy Construction Company, Re-
spondents.

No. 82-2341.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1983.

Decided March 2, 1984.

William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Carol A. De Deo, Mendelssohn V. McLean, Attys., N.L.R.B., Washington, D.C., for petitioner.

Dean G. Kratz, McGrath, North, O'Malley & Kratz, P.C., Omaha, Neb., for respondents.

Before BRIGHT, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The National Labor Relations Board has applied for enforcement of an order against Carmichael Construction Company, Hahn & Hupf Construction, Inc., and Kealy Construction Company requiring that each company cease and desist from unfair labor practices and recognize and bargain with the United Brotherhood of Carpenters and Joiners of America, Local Union No. 1672, AFL–CIO (Union). In addition, Kealy is required to cease and desist from unilaterally granting wage increases or making any other unilateral change in the unit and employees' terms and conditions of employment without having first bargained in good faith. The Companies object arguing that they had a good faith belief that the Union no longer represented their employees. We grant enforcement of the order.

From 1972 until May 1, 1980, the three companies had been parties to successive one-year collective bargaining agreements with the Union. The most recent agreements were identical and effective May 1, 1979 to May 1, 1980. On January 28, 1980, the Union sent identical letters to each company requesting that bargaining commence with regard to a new contract. The Companies did not respond, and on February 22 the Union again requested the commencement of negotiations. On February 27 the Companies informed the Union of their intention to terminate the bargaining relationship following the expiration of the contract on May 1. The Union sent letters on April 14 and April 25 to which the Companies did not respond, and on May 1 the Union members voted to strike.

On May 14 the Union offered to extend the most recent contract for one year to May 1, 1981, and the Companies did not respond. On May 17 the strike ended. Before May 1, Kealy increased the wages of its journeymen carpenters from $9.35 per hour to $10.10 per hour.

The Union filed charges with the National Labor Relations Board against the three Companies, and a hearing was held to determine whether the Companies had violated the National Labor Relations Act. The Board found that there were valid collective bargaining agreements between the Companies and the Union which created a presumption of the Union's majority status. The Board further found that the Companies had failed to rebut the presumption of the majority status with evidence that in

1980 the Union ceased to represent a majority of the Companies' carpenter employees and failed to demonstrate that their refusal to bargain with the Union was based on a good faith doubt. The Board also found, in agreement with the administrative law judge, that Kealy violated § 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5) (1973), by unilaterally changing the wage rates of its journeymen carpenters.

The Companies argue that the administrative law judge and the Board did not give proper weight and consideration to certain of the exhibits showing union membership at the time of the dispute. Their argument is essentially a factual one. They claim that they had a reasonable basis for doubting that the Union represented a majority of their carpenter employees. The Board adopted the administrative law judge's conclusion that the asserted defenses of good faith doubt were not supported by sufficient evidence.

## I.

When an employer and a union enter into a collective bargaining agreement, an irrebuttable presumption of majority status is raised and continues for the duration of the contract. *Colson Equipment, Inc. v. NLRB,* 673 F.2d 221, 224 (8th Cir.1982); *Pioneer Inn Associates v. NLRB,* 578 F.2d 835, 838 (9th Cir.1978). Following the expiration of a contract, the presumption can be rebutted if the employer can show that the union actually lacked majority support on the date in question or that the refusal to bargain was based upon a reasonably grounded good faith doubt of the union's majority support. *Colson, su-*

pra, 673 F.2d at 225; *National Car Rental System, Inc. v. NLRB,* 594 F.2d 1203, 1205 (8th Cir.1979); *Pioneer Inn, supra,* 578 F.2d at 839.

To rebut the presumption by establishing its good faith doubt, the employer may not rely on "a self-serving assertion." *NLRB v. North American Manufacturing Co.,* 563 F.2d 894, 896 (8th Cir.1977); *NLRB v. Little Rock Downtowner, Inc.,* 414 F.2d 1084, 1091 (8th Cir.1969). The employer must present clear and convincing evidence sufficient to warrant a good faith doubt of the union's majority. The good faith doubt must satisfy an objective test, although subjective evidence may be used to bolster the argument that such doubt existed at the relevant time. *Pioneer Inn, supra,* 578 F.2d at 839; *NLRB v. Windham Community Memorial Hospital,* 577 F.2d 805, 811 (2d Cir.1978); *Orion Corp. v. NLRB,* 515 F.2d 81, 85 (7th Cir.1975).

Whether an employer meets its burden of demonstrating objective considerations sufficient to support its asserted good faith doubt is a question of fact; therefore, the Board's determination must be upheld if supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Windham, supra,* 577 F.2d at 811; *Orion, supra,* 515 F.2d at 85–86.

## II.

The only issue before this Court is whether evidence that less than a majority of the unit employees were members of the Union is sufficient to establish a good faith doubt of the Union's majority status.[1] The

---

1. Before the Board the Companies made three arguments seeking to validate their conceded refusal to bargain with the Union. First, the Companies argued that the collective bargaining agreements were pre-hire agreements entered into pursuant to § 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f), and therefore, did not give rise to any presumption of majority status.

    The Companies further argued that, even if the presumption of majority status applied, they rebutted the presumption by demonstrating a good faith doubt as to the Union's majori-

ty status. The Companies contended that their good faith doubt of the Union's majority status was based on (1) "general feelings and conversations with employees," and (2) evidence that less than a majority of the unit employees were members of the Union.

    In their brief to this Court, the Companies did not present either of their first two arguments, raising only the issue of union membership in regard to establishing a good faith doubt of the union's majority status. Since they failed to raise the other arguments, their

Companies contend that their doubt as to the Union's majority status must have been in good faith because the Union's membership ledgers show that less than a majority of the employees were Union members at the time the Companies refused to negotiate with the Union. However, lack of union membership alone is not enough to establish a reasonable doubt of majority status. As we explained in *NLRB v. North American Manufacturing Co., supra,* 563 F.2d at 897 n. 2, records of actual membership are inadequate as proof of a bona fide doubt of majority status or as evidence of a lack of majority support.[2]

> The issue to be decided [is] not how many employees belonged to the union or paid dues but rather whether a majority desired union representation.... [T]here is no necessary correlation between support for the union ... on the one hand, and the payment of dues or membership in the union, on the other.

*Id., quoting Retired Persons Pharmacy v. NLRB,* 519 F.2d 486, 491 (2d Cir.1975).

The cases on which the Companies rely do not fully support their assertion that lack of union membership establishes a good faith doubt of majority status. In each of the cases they cite there was additional evidence, not presented nor found here, which supported the court's conclusion that a good faith doubt existed. In *NLRB v. Laystrom Manufacturing Co.,* 359 F.2d 799, 800 (7th Cir.1966), the evidence showed a narrow margin of victory by the union in an election two years earlier and high employee turnover. In *Mid-Continent Petroleum Corp. v. NLRB,* 204 F.2d 613, 614 (6th Cir. 1953), there was also evidence of high employee turnover and the employees had notified their employer by letter of their desire not to be represented by the union. In both *NLRB v. Globe Automatic Sprinkler Co.,* 199 F.2d 64, 70 (3d Cir.1952), and

*NLRB v. Bradley Washfountain Co.,* 192 F.2d 144, 155 (7th Cir.1951), the employees had filed decertification petitions. None of the additional factors involved in these situations are present in the instant case. Although in their brief the Companies contend that there exists a high level of employee turnover, they point to no evidence in the record to support this claim.

The Companies' contention that their doubt of the Union's majority status is in good faith because they initially recognized the Union voluntarily, without an election, is also without merit. The Board found that the Companies had conceded the majority status of the Union "at all times prior to 1980." This finding is adequately supported by the testimony of the Companies.

█ We conclude that the Board's findings that the Companies failed to rebut the presumption of the Union's majority status, and, therefore, that they violated § 8(a)(1) and (5) of the National Labor Relations Act by their withdrawal of recognition and refusal to bargain are supported by substantial evidence on the record as a whole.

### III.

The Board also found that Kealy Construction Co. increased the wages of its employees represented by the Union without bargaining with the Union concerning the increase. Kealy does not contest this finding on appeal, but simply relies on the fact that since it had a good faith doubt of the Union's majority status, such unilateral action was not improper.

█ Since we conclude, as the administrative law judge and the Board found, that the Companies did not present sufficient evidence to rebut the presumption of the Union's majority status, the only possible justification for Kealy's granting of unilat-

---

reliance thereon is waived. *NLRB v. Nevis Industries, Inc.,* 647 F.2d 905, 908 (9th Cir. 1981); *NLRB v. Tennessee Packers, Inc.,* 344 F.2d 948, 949 (6th Cir.1965).

**2.** Moreover, the Union's membership ledgers do not provide "clear and convincing evidence" relevant to whether the Companies' refusal to

bargain was based on a good faith doubt since the Companies have not shown that they were aware of the ledgers or of the level of Union membership at the time they refused to bargain. *See North American Manufacturing Co., supra,* 563 F.2d at 897 n. 2.

eral benefits is removed. *See North American Manufacturing Co., supra,* 563 F.2d at 898. Thus, the Board properly found that Kealy's unilateral increase of wages violated § 8(a)(1) and (5) of the National Labor Relations Act.

The petition of the Board for enforcement of its order is therefore granted.